2007-NMCA-115

168 P.3d 1101

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Ernest SENA, Defendant–Appellant.**

**No. 24,156.**

Court of Appeals of New Mexico.

June 21, 2007.

Certiorari Granted, Aug. 8, 2007.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Will O'Connell, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

KENNEDY, Judge.

{1} Defendant Ernest Sena appeals from convictions of two counts of criminal sexual contact of a minor committed against his granddaughter (the Child). Defendant was charged with five counts of first-degree criminal sexual penetration of a minor (CSPM) and seven counts of criminal sexual contact of a minor (CSCM). All incidents were alleged to have occurred between June 11, 2000, and July 8, 2000. At the close of the State's case, the trial court granted directed verdicts of acquittal on all but two counts of CSPM. The jury acquitted Defendant on both remaining counts of CSPM but found him guilty on both counts of the lesser-included offense of CSCM.

{2} On appeal, Defendant claims the following errors: (1) the court erred in refusing to grant a directed verdict as to one of the two counts of CSPM due to evidence of their timing; (2) he was denied a fair trial for the following reasons: the trial court's admission of certain evidence and testimony, the trial court's denial of his motion for a mistrial, and the prosecutor's statement regarding the evidence in the case which implicated his Fifth Amendment rights; (3) his acquittal of CSPM required dismissal of the lesser-included charges based on the unitary nature of the conduct; (4) he received ineffective assistance of counsel; (5) the trial court erred in aggravating his sentence; and (6) he

was denied his right to a speedy trial and his sentencing hearing was improperly delayed.

{3} We reverse the trial court's ruling and remand for a new trial because only one count of CSPM could survive the directed verdict challenge. We also reverse Defendant's conviction of the remaining count because the trial court's admission of other act evidence was erroneous.

## FACTS AND BACKGROUND

{4} The charges of CSPM and CSCM stem from a series of incidents between Defendant and the Child in which the Child testified that Defendant had touched her on her "private parts."

{5} During the time period in which the incidents occurred, it is important to note that the Child had a severe eczema rash. In February 2000, the rash was on the back of the Child's thighs, extending from her buttocks to her knees. The rash worsened until, by March 2000, it extended to her back and chest. The rash was at its worst in the summer of 2000, and the family doctor recommended treatment using moisturizing lotions and hydrocortisone cream. When the Child spent time at her grandparents' home, the Child's mother would give Defendant and his wife ointment to spread on the rash. This was usually done after the Child had showered but before she put on any clothing, as clothing would further irritate the rash.

{6} At trial, the Child was unable to testify as to the specific dates that the events occurred, but the prosecution narrowed down the time period using distinguishing events from the summer of 2000. The time period to which the prosecution related the incidents was between June 11, 2000—the Child's trip to Colorado, and July 8, 2000—the Child's birthday party.

{7} The Child did not immediately disclose the incidents to anyone, and later testified that Defendant had told her not to tell anyone because he would go to jail. The Child initially reported the incidents of inappropriate touching to her cousin. In December 2000, the Child reported the incidents to her mother, alleging that Defendant had inappropriately touched her. As a result, Defendant was charged with CSPM and CSCM.

## DISCUSSION

### A. The Denial of a Directed Verdict Was Erroneous as to One Count

■■■■ {8} We review the denial of a directed verdict of acquittal to determine whether substantial evidence supported the charge. *State v. Dominguez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993). When reviewing a substantial evidence claim, "[t]he relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Perea*, 2001–NMSC–026, ¶ 5, 130 N.M. 732, 31 P.3d 1006 (internal quotation marks and citations omitted). If there is sufficient evidence to support the verdict, the reviewing court will not weigh the evidence or substitute its judgment for that of the fact-finder. *State v. Mora*, 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789.

{9} The charges of CSPM were based on events occurring between June 11, 2000, and July 8, 2000. The State conceded that the only counts that could survive the directed verdict were those that occurred between those dates. The Child testified that, between June 11 and July 8, 2000, she could only remember *one* incident of inappropriate touching:

[Prosecutor]: [Child], you said he touched your privates?

[Child]: Yes.

[Prosecutor]: When was this?

[Child]: I am not sure.

[Prosecutor]: Do you remember was it before or after you turned 8?

[Child]: I think it was before.

[Prosecutor]: And was it before, did you go to Colorado with your parents?

[Child]: Yes.

[Prosecutor]: Was it before or after Colorado?

[Child]: I think it was before.

[Prosecutor]: Did it ever happen after Colorado?

[Child]: Yes.

[Prosecutor]: How many times did it happen?

[Child]: I think it was about five I am not sure.

[Prosecutor]: So did some of it happen before Colorado?

[Child]: *Most happened before Colorado and once after.*

[Prosecutor]: Did you say some of it before Colorado and one time after Colorado?

[Child]: I said most of it happened before and once after, I think, I am pretty sure once after Colorado.

[Prosecutor]: *Once after Colorado and before your birthday?*

[Child]: Yes.

(Emphasis added.)

{10} Since the time period at issue is defined as between the Colorado trip and the Child's birthday party, the Child clearly testified that only one incident occurred. Despite the semantic problem of the prosecutor summarizing the Child's testimony as "once after Colorado and one before" the birthday, the evidence reveals only one incident occurring in the framed time period. The evidence thus falls short of the necessary two events to secure two convictions of CSCM beyond a reasonable doubt. We hold that only one count of CSCM was proved and reverse on the other count.

## B. Evidence of Other Bad Acts

■ {11} Defendant contends that the trial court erred in allowing the State to present extensive evidence that Defendant "groomed" the Child as a sexual partner. An appellate court will defer to the discretion of the trial court when reviewing the admission or exclusion of evidence and will not reverse absent a clear abuse of discretion. *State v. Mercer*, 2005–NMCA–023, ¶ 6, 137 N.M. 36, 106 P.3d 1283. An abuse of discretion occurs when the trial court's decision can be characterized as clearly untenable or not justified by reason. *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234(1995). "While trial courts have discretion to strike a balance between probative value and prejudice, they must always be sensitive to the potential prejudice inherent in evidence of the defendant's prior uncharged conduct." *State v.*

*Aguayo*, 114 N.M. 124, 128, 835 P.2d 840, 844 (Ct.App.1992).

{12} In the prosecution's opening statement and throughout the trial, the prosecution maintained that Defendant had engaged in behavior intended to "groom" the Child to be a victim of sexual assault. This "grooming" behavior was based on certain acts attributed to Defendant, the importance of which Defendant vigorously challenged. The State claimed that this evidence was to be used as evidence of plan, preparation, or intent, asserting that Defendant was "grooming" the Child for future sexual abuse.

{13} Before trial, Defendant filed two motions in limine to keep the "grooming" evidence from being admitted at trial. Defendant sought to exclude the following: a nude photograph of Defendant's ex-wife, testimony that Defendant previously owned pornographic videos, a pair of thong underwear owned by Defendant's ex-wife, testimony that Defendant had showered with the Child, and testimony that Defendant had walked around the house naked in front of the Child. The trial court allowed the Child to testify that Defendant had once showed her a movie in which two unclothed people had sex and a pair of her grandmother's thong underwear. The Child was also allowed to testify that she and her younger brother had once showered with Defendant and Defendant once walked around naked in front of her. These incidents occurred within no stated time period, and not within the charged time frame. There were no allegations by the Child that any inappropriate touching occurred at any times associated with the other acts or occurrences. No pornographic videotapes were produced as a result of a search of Defendant's home.

■ {14} The trial court relied on Rule 11–404(B) NMRA in allowing the other act evidence in at Defendant's trial. Rule 11–404(B) allows the admission of evidence of other crimes, wrongs, or acts, not to prove that the person had a character trait in conformity with which he acted, but to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *State v. Beachum*, 96 N.M. 566, 567–68, 632 P.2d 1204, 1205–06 (Ct.App.

1981). This list is not exhaustive, but merely illustrative, as "evidence of other wrongs may be admissible on alternative relevant bases so long as it is not admitted to prove conformity with character." *State v. Martinez*, 1999–NMSC–018, ¶ 27, 127 N.M. 207, 979 P.2d 718. "The initial threshold for admissibility of prior uncharged conduct is whether it is probative on any essential element of the charged crime." *Aguayo*, 114 N.M. at 128, 835 P.2d at 844. The trial court allowed evidence of these "other acts" as an exception to Rule 11–404(B); namely that Defendant was "grooming" the Child to become a victim of sexual assault.

{15} We have plenty of examples to show what "grooming" is. "Grooming" is defined as "[t]he process of manipulation often utilized by child molesters, intended to reduce a victim's or potential victim's resistance to sexual abuse. Typical grooming activities include gaining the child victim's trust or gradually escalating boundary violations ... in order to desensitize the victim to further abuse." *Ctr. For Sex Offender Management, Glossary of Terms Used in the Management and Treatment of Sexual Offenders* 11 (1999), http://www.csom.org/pubs/glossary.pdf. "Grooming" can be delineated as including:

> [T]hree components: 1) "sexualization," where the offender starts off under the guise of "normal behavior" and non-sexual physical contact but becomes increasingly more sexual and intrusive, 2) "justification," where the offender tells the child that the touching isn't really sexual, perhaps that it is hygienic or educational, and 3) "cooperation," where the offender persuades the child not to tell by threatening some type of harm or bad consequence.

4 Elizabeth F. Kuniholm and Kim Church, *ATLA's Litigating Tort Cases* § 54:12 (2006).

■ {16} Cases in other jurisdictions have recognized a defendant's actions as "grooming" when "[t]he victim's testimony demonstrated that the defendant began to prepare her as a sexual victim ... [in] a concerted and detailed effort to groom [her] ... for what turned out to be years of sexual predation." *State v. Castine*, 141 N.H. 300, 681 A.2d 653, 655 (1996) (alterations in original) (internal quotation marks omitted). The *Castine* court also found that "[v]iewed objectively, the other bad acts must clearly tend to show that the defendant had a definite prior design or system which included the doing of the act charged as part of its consummation." *Id.* at 656 (internal quotation marks and citation omitted). The testimony in *Castine* equated to a "series of interdependent acts" which formed a "calculated design by the defendant to 'groom' the victim." *Id.*

■ {17} "Grooming" evidence is not, however, allowed to show that the defendant is the kind of person that would commit the crime that he has been charged with. *Id.* at 656. Not all "grooming" evidence is admissible. Some courts have prohibited evidence of "grooming," holding that there was no probative value to "grooming" testimony with regard to child abuse cases. *See State v. Hansen*, 304 Or. 169, 743 P.2d 157, 161 (1987) (en banc) ("That child abusers use these techniques has no bearing on whether a person who does these things is a child abuser.").

{18} Evidence of grooming is almost universally presented to the jury through the lens of expert testimony. *See, e.g., State v. Query*, 594 N.W.2d 438, 442 (Iowa Ct.App. 1999) (testimony of the defendant's therapist explained and gave examples of "grooming"); *State v. Bankes*, 114 Wash.App. 280, 57 P.3d 284, 286 (2002) (utilizing doctor's testimony regarding grooming in findings and conclusions). Other courts have also considered "grooming," but only during sentencing. *See, e.g., State v. Pfeil*, 1998 ME 245, ¶ 18, 720 A.2d 573 (considering "grooming" activities in sentencing the defendant); *Commonwealth v. Krouse*, 799 A.2d 835, 840 (Pa.Super.Ct.2002) (considering grooming testimony in determining sexually violent predator status of defendant). In this case, only the repeated assertions of the prosecutor that Defendant had "groomed" the Child were heard by the jury as to what "grooming" was, and how its offered evidence met the definition. These constitute argument, not evidence.

■ {19} Trial courts have to exercise extra vigilance when admitting evidence of other bad acts, *State v. Jones,* 120 N.M. 185, 187, 899 P.2d 1139, 1141 (Ct.App.1995), even if the evidence can be characterized as "grooming" for Rule 11–404(B) purposes. Rule 11–404(B) generally prohibits other act evidence. *See Jones,* 120 N.M. at 187, 899 P.2d at 1141; *State v. Otto,* 2005–NMCA–047, ¶ 13, 137 N.M. 371, 111 P.3d 229 (stating that Rule 11–404(B) is "fundamentally a rule of exclusion," which "establishes a prohibition against using acts to prove a character trait from which it may then be inferred [the d]efendant followed to commit the present crime"), *rev'd on other grounds,* 2007–NMSC–012, ¶ 22, 141 N.M. 443, 157 P.3d 8. "[T]estimony which amounts to evidence of a defendant's bad character, or disposition to commit the crime charged, when not offered for a legitimate purpose, is inadmissible and unfairly prejudicial," *State v. Rael,* 117 N.M. 539, 540, 873 P.2d 285, 286 (Ct.App.1994), even though the evidence itself might be otherwise relevant. *State v. Gallegos,* 2007–NMSC–007, ¶ 22, 141 N.M. 185, 152 P.3d 828.

{20} Defendant appropriately cites to *Aguayo* for the proposition that uncharged conduct is one of the most damning forms of evidence against a defendant, and that the court must be careful in choosing to admit any uncharged conduct. *Aguayo,* 114 N.M. at 130, 835 P.2d at 846. We agree. In *Aguayo,* the trial court permitted testimony regarding the defendant's prior treatment of the infant victim, along with three "other wrongs" perpetrated by the defendant against the infant child. *Id.* at 127–28, 835 P.2d at 843–44. The trial court characterized those "other wrongs" as "prior abuse." *Id.* at 127, 835 P.2d at 843. Despite the testimony regarding the "other wrongs," there was no testimony that this past conduct harmed the infant victim in any way. *Id.* at 128, 835 P.2d at 844. This Court held that "the admission of unexplained dissimilar prior bad acts makes a new trial appropriate." *Id.* at 132, 835 P.2d at 848. As a result of this overreaching the jury's verdict became unreliable.

{21} Our Supreme Court recently decided *State v. Kerby,* 2007–NMSC–014, ¶ 26, 141 N.M. 413, 156 P.3d 704, addressing the issue of intent in the context of other act evidence. The Court held that evidence of defendant's peephole into the victim's bathroom was admissible as other act evidence because the defendant contested the issue of his intent. *Id.* The Court further held that because "unlawfulness" was a requisite element of the crime of CSCM, and "unlawfulness" can be proven "by showing defendant's behavior was done . . . to arouse or gratify sexual desire," the peephole evidence was proper to show that "when [d]efendant touched [v]ictim's buttocks he did so with a sexual intent." *Id.* (internal quotation marks and citation omitted). This case is distinguishable. The "other acts" evidence put forward by the prosecution in its case-m-chief was to prove a pattern of behavior directed toward the purpose of "grooming" the Child as willing and compliant to Defendant's sexual abuse. The evidence does not deliver on the prosecution's promise to establish "grooming" behavior because the physical evidence is too far dissociated from the behavioral evidence or the acts alleged in the charging documents to establish what the prosecution maintained they were.

{22} The dissent's use of *Kerby* to analogize to this case goes too far. In *Kerby,* the defendant's peephole allowed him a direct view into the child victim's bathroom. *Id.* The behavior was directed specifically at the child victim and had a specific context that supported the idea that the defendant had engaged in preparatory behavior relative to his sexual touching of the child. In this case, the behaviors are so disparate in time, nature, and alternative explanations as to stand in stark contrast to Kerby's very victim-focused behavior. Here, the other act evidence was little more than prosecutorial pandering based on supposition.

{23} It is apparent from the record that when the State offered testimony regarding Defendant's "grooming" conduct, the real purpose of the testimony was to show the jury that Defendant acted like a pervert on occasion. Effectively, the State was trying to imply that Defendant was acting in conformity with that trait. This other act evidence is too disparate and disjointed to satis-

fy the requirements of "grooming" behavior as broadly recognized by the cited authorities or the requirements of Rule 11–404(B). None of the incidents allowed by the trial court happened more than once or involved inappropriate touching. It established no pattern of behavior toward the ends presumed by use of the word "grooming." The purpose of this evidence was to provide the jury with evidence of Defendant's prior inappropriate conduct. This is exactly the type of evidence that Rule 11–404(B) prohibits. Without an objective ability to link events separated by time and kind into a pattern, we view the conduct as unrelated to the charged incidents, yet highly prejudicial.

{24} Here, unrelated acts were presented by the State and accepted by the court as part of a supposed, but amorphous course of "grooming" behavior. The bundling of circumstantial evidence into an official-sounding theory only increases its apparent value, its proportionality, and its prejudicial effect. The only link between the individual acts and their import as grooming behavior came from the prosecutor, not an expert. We emphasize that the prosecutor is neither a witness giving testimony nor an expert witness.

{25} Grooming has to be linked with the defendant's intent by more than arguments of counsel, as must be shown to be based on a pattern of purposeful behavior linked to psychological characteristics of the defendant. Grooming is something that is intended to foster trust and remove defenses over time: a *pattern* of seduction and preparation for abuse to be accepted by the victim as routine behavior. As such, grooming testimony cannot be haphazardly substantiated to the jury by way of opening and closing statements and suggestions by the State. We take this opportunity to reiterate that this is testimony best left to an expert witness, which the prosecution did not provide. We do not however, as the dissent suggests, seek to require an expert to establish grooming in all cases. However, where clear definitions and examples exist, it is not for a prosecutor's arguments to stand as evidence contrary to clear standards.

{26} Only the State's own interpretation establishes any connection between Defen-

dant's alleged "grooming" attempts with the Child and any actual "grooming" of the Child by Defendant as the term is professionally understood. In short, the State was unable to present evidence from which the jury could do more than speculate that Defendant was engaging in a pattern of "grooming." Without the demonstrative connection, this characterization of unrelated behavior presented by the State does not pass muster under Rule 11–404(B). Defendant's conduct was not particularly probative of motive, opportunity, intent, preparation, or future plans for sexually exploiting the Child. The prosecution merely presented isolated incidents of behavior that are meaningless without the inference that Defendant was a pervert acting in conformity with that trait. Because the issue is whether Defendant actually committed the crime he is accused of, the danger with evidence of Defendant's "preparation" of the Child is likely to be confused with general propensity to commit the crime against the Child.

{27} Due to our conclusion that the influence of the prosecution's improper use of the concept of "grooming" improperly prejudiced Defendant's right to a fair trial so as to require reversal, we do not address the remaining issues raised by Defendant. "Grooming" has a specific meaning, and exists in a specific context that the prosecution failed to properly introduce before the jury. Absent this background, the prosecution's unsupported theory that Defendant "groomed" the Child to make her more susceptible to abuse is improper and prejudicial in this case. The Child's testimony revealed her as a person who was not led to submit, and whose appreciation of the world around her was not subsumed to Defendant's will. As in *State v. Jojola*, 2005–NMCA–119, ¶ 2, 138 N.M. 459, 122 P.3d 43, the defect requiring reversal in this case stands apart from the sufficiency of the evidence supporting the remaining charge. Although Defendant did not raise sufficiency of the evidence, we hold that upon reviewing the facts in this case, sufficient evidence exists in this case to support Defendant's conviction, and therefore remand for a new trial rather than for dismissal. *See State v. Ortiz–Burciaga*, 1999–NMCA–146,

¶ 1, 128 N.M. 382, 993 P.2d 96. Additionally, since Defendant's speedy trial issue would be dispositive to the case on remand, we address that issue as well.

### Denial of Motion for Mistrial After PowerPoint Presentation of Defendant's Ex–Wife's Statement

{28} Just before the trial was to begin, the trial court reiterated to the prosecution that it had barred any statements made by Defendant to his ex-wife. At trial, during the prosecution's opening statement, the prosecutor presented the jury with a video display (PowerPoint) presentation to accompany his opening statement. Included in this PowerPoint presentation was a slide that had Defendant's ex-wife's statements printed on it. The slide contained statements from Defendant's ex-wife that he had told her that he had touched the Child's vagina and that he had showered with the Child. This slide came up during the course of the prosecutor's opening statements. The prosecutor blocked the jury's view of the display, the defense asked for a mistrial, and the jury was excused. The trial court did not grant the motion for a mistrial based on the court's admonition to the jury and because those same statements would be coming from other witnesses.

{29} The showing of the PowerPoint presentation to the jury, including material excluded from evidence by the court, skates right on the line between permissible and willful conduct by the prosecution and deserves a comment, though we do not rule on the matter. The prosecutor created the PowerPoint presentation before trial and controlled its contents. Despite the pre-trial ruling of the trial court that the ex-wife's statement was covered under the marital communication privilege, the prosecution did not delete the slide in the PowerPoint presentation. Instead of deleting the slide, the prosecutor published to the jury Defendant's ex-wife's statement that she "[h]eard Defendant say 'I showered naked' and 'touched [Child's] vagina.' "

{30} This sloppy mistake flouted the court's specific order not to introduce testimony or evidence regarding the statements that Defendant made to his ex-wife. The court reminded the prosecution of this exclusion "a few minutes" before trial was to begin. The trial court found that the incident happened quickly, that the defense attorney was alert and objected immediately, and that there were other witnesses who would testify to the same statements that were displayed on the PowerPoint.

### Speedy Trial

█ {31} Defendant failed to invoke his right to a speedy trial in a timely manner. Defendant's first notice to the court that his right to a speedy trial may have been violated was given in the docketing statement. [RP 152] Defendant failed to preserve this argument for appeal in accordance with Rule 12–216(A) NMRA. *See State v. Manzanares,* 1996–NMSC–028, ¶ 7, 121 N.M. 798, 918 P.2d 714(stating that a motion to protect speedy trial rights must be presented to the trial court before it can be considered on appeal).

### CONCLUSION

{32} We hold that the trial court erred in not granting a directed verdict as to one of the counts of CSCM and in admitting other act evidence at trial. We reverse and remand for a new trial consistent with this opinion.

{33} **IT IS SO ORDERED.**

I CONCUR: IRA ROBINSON, Judge.

CYNTHIA A. FRY, Judge (dissenting).

FRY, Judge (dissenting).

{34} I respectfully dissent. In my view, a rational trier of fact could have found that two incidents of CSCM occurred, and, therefore, denial of Defendant's motion for directed verdict was proper. In addition, I think the evidence that Defendant showed the Child a sexually explicit video and his wife's thong underwear, and that Defendant had showered with the Child and walked around naked in front of her was admissible on two grounds: (1) to refute evidence that Defendant touched the Child by accident or mistake, and (2) to establish the CSCM element

of unlawfulness. I would affirm the trial court's judgment.

## Directed Verdict Motion

{35} The Child's testimony about the number of incidents of inappropriate touching during the relevant time period was ambiguous. The time period in question was after the trip to Colorado and before the Child's eighth birthday. When the prosecutor asked the Child if the touching ever happened "after Colorado" the Child responded, "Yes." The prosecutor then asked, "How many times did it happen?" and the Child responded, "I think it was about five[,] I am not sure." A reasonable juror could infer from this testimony that there were five incidents of inappropriate touching that occurred after the Colorado trip. The Child then testified that "[m]ost happened before Colorado and once after." This testimony was inconsistent with the prior testimony about five incidents occurring after the Colorado trip. It is improper for us to attempt to sort out what actually happened. Rather, "[i]t is the exclusive province of the jury to resolve factual inconsistencies in testimony." *State v. Morales*, 2000–NMCA–046, ¶ 8, 129 N.M. 141, 2 P.3d 878 (internal quotation marks and citations omitted). In addition, the Child testified about several distinct incidents, some of which involved Defendant touching her "privates," some of which involved straddling her or lying on top of her, some of which happened when she was alone, and some of which happened when her grandmother was in the bed with her. It was up to the jury to sort through the evidence and determine the facts. This Court should not reweigh the evidence or substitute our judgment for that of the fact finder. *See State v. Mora*, 1997–NMSC–060, ¶ 27, 124 N.M. 346, 950 P.2d 789. I would affirm the trial court's denial of Defendant's motion for directed verdict.

## Evidence of Other Acts

{36} The majority holds that the trial court abused its discretion in admitting evidence of Defendant's other acts because it was nothing more than propensity evidence, which is inadmissible under Rule 11–404(B). In support of this holding, the majority concludes that the State's theory that Defendant was "grooming" the Child was a pretext for establishing that Defendant "acted like a pervert on occasion." Majority opinion, ¶ 22. Even if this statement is correct, the majority disregards the established rule that we may affirm a trial court's ruling on a ground not relied upon by the trial court if reliance on the new ground would not be unfair to the appellant. *State v. Allen*, 2000–NMSC–002, ¶ 90, 128 N.M. 482, 994 P.2d 728. In this case, two theories support the trial court's admission of the evidence.

{37} First, the evidence was admissible to prove the absence of mistake or accident. *See* Rule 11–404(B) (permitting admission of evidence of other crimes, wrongs, or acts to prove the "absence of mistake or accident"). At least three witnesses testified that Defendant said he touched the Child's vagina, but only because he was applying medication to her rash. This testimony puts this case on the same footing as *State v. Otto*, 2007–NMSC–012, 141 N.M. 443, 157 P.3d 8. In *Otto*, evidence of the defendant's uncharged, multiple digital penetrations of the child was admissible to refute evidence that the defendant touched the child unconsciously or by mistake. *Id.* ¶¶ 5, 11. Similarly, in the present case, the evidence of Defendant's sexually fraught conduct with the Child refutes the evidence that Defendant touched the Child strictly for medical reasons. "[T]he prosecution had the right to introduce evidence to show that [the d]efendant's actions were intentional and not committed accidentally or by mistake." *Id.* ¶ 11.

{38} Second, the evidence was material to the CSCM element of unlawfulness, which may be proved by showing that Defendant's conduct was done to arouse or gratify sexual desire. *Kerby*, 2007–NMSC–014, ¶ 26. In *Kerby*, our Supreme Court affirmed the trial court's admission of evidence that the defendant created a peephole that allowed him to clandestinely peer into the child's bathroom. *Id.* The Court stated that this evidence of uncharged conduct refuted evidence that the defendant's touching of the child's buttocks was a fatherly pat. *Id.* Thus, the evidence was relevant to the unlawfulness element of CSCM by creating the inference that the

defendant touched the child with sexual intent. *Id.* The same can be said of Defendant's conduct in this case. The jury was instructed on CSCM, and the evidence tended to show that Defendant's touching of the Child was sexually, rather than medically, motivated.

{39} It would not be unfair to Defendant to affirm the trial court on either of these theories of admissibility. At the hearing on Defendant's motion in limine, the prosecutor specifically argued these theories. He contended that the evidence was admissible under Rule 11–404(B) because: (1) defense counsel had submitted a jury instruction that included the element of gratifying sexual desire, and (2) it would refute the evidence that the touching was a "medical application." Defendant had the opportunity to respond to these arguments.

{40} The majority also implies that admission of the evidence in question was improper because evidence of "grooming" is properly admitted only through the testimony of an expert, and the State did not have an expert witness. Majority opinion, ¶¶ 18, 23–24. Defendant did not make such an argument below or on appeal. Consequently, this Court should not rely on this ground to support reversal. "Courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories." *In re Doe,* 98 N.M. 540, 541, 650 P.2d 824, 825 (1982) (internal quotation marks and citation omitted).

{41} For the foregoing reasons, and because none of Defendant's other arguments have merit, I would affirm his convictions.