IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

STATE OF NEW MEXICO,

Plaintiff-Appellee,

v.                                                                    NO. 24,156

ERNEST SENA,

Defendant-Appellant.


**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**Camille Martinez Olguin, District Judge**


Gary K. King, Attorney General
Patricia Gandert, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**KENNEDY, Judge.**

The opinion filed in this appeal on March 4, 2009, is hereby withdrawn.  This opinion is substituted in its stead.  The opinion is being refiled in order to correct our

previous holding that Defendant's sentence was properly aggravated. This case returns to us by way of our Supreme Court's decision in *State v. Sena*, 2008-NMSC-053, ¶ 1, 144 N.M. 821, 192 P.3d 1198 (*Sena II*). Defendant Ernest Sena (Sena) appealed his conviction for two counts of criminal sexual contact of a minor; we narrowly reversed. *State v. Sena*, 2007-NMCA-115, ¶¶ 1, 3, 142 N.M. 677, 168 P.3d 1101 (*Sena I*). Our Supreme Court subsequently reversed, *Sena II*, 2008-NMSC-053, ¶ 1, and remanded the case to us to analyze Sena's remaining claims. We hold that his sentence was improperly aggravated and that the record and pleadings at this stage fail to support his claim for ineffective assistance of counsel, though he is free to pursue it in a collateral proceeding. We affirm on all other issues.

**BACKGROUND**

Sena was indicted on five counts of criminal sexual penetration of a minor, contrary to NMSA 1978, Section 30-9-11(C)(1) (1995, prior to amendments through 2007), and seven counts of criminal sexual contact of a minor, contrary to NMSA 1978, Section 30-9-13(A)(1) (1991, prior to amendments through 2003). *Sena II*, 2008-NMSC-053, ¶ 2. During the summer of 2000, the victim would occasionally spend time at the home of her grandparents, Sena and his wife at the time, Sandra Olguin (Olguin). *Id.* One of the couple's responsibilities while taking care of the victim was to treat an eczematous rash that covered her body from the back of her

waist to the back of her knees. *Id.* Part of the treatment regimen required the application of medicinal ointment to her rash—a procedure done by both Olguin and Sena. *Id.* The victim later alleged that Sena inappropriately touched her "private area" during at least one of those treatments. *Id.*

Police initiated an investigation and conducted an interview with Sena in his home on April 9, 2001. In that interview, which was recorded, police noted various incriminating comments made by Sena. He stated that he kept pornography in his home, that the victim slept in the bed with him and Olguin, that he took showers with the victim, and that he touched the victim's vagina in order to apply medicine to her rash. The prosecution later used this evidence at trial over Sena's motion to suppress, which had been denied by the district court.

Sena also made an unsuccessful motion for mistrial during voir dire. In his remarks to the jury, the prosecutor stated, "This case is going to be mostly, or all, about one person's word against another." The basis for Sena's objection was that the statement implicated his constitutional right to be free from compelled self-incrimination. U.S. Const. amend. VI. The district court denied the motion and issued a limiting instruction to the jury, informing them that Sena had no obligation to testify. Prior to trial, Sena invoked New Mexico's marital privilege, Rule 11-505 NMRA, seeking to exclude various statements he made to Olguin. The district court

3

granted his motion and ruled that all confidential communications made by Sena to Olguin would be suppressed. On the first day of trial, the court revisited the matter and ruled that certain portions of Olguin's testimony did not concern communications and were thus admissible. Moments later, during his opening statement, the prosecutor displayed a digital slide which contained the text of a remark made by Sena to Olguin that violated the court's order. Sena lodged an objection and a motion for mistrial, which the court denied after lengthy argument.

At the conclusion of trial, the jury found Sena guilty of two counts of criminal sexual contact. Later, at Sena's sentencing hearing, the court found several aggravating factors and increased Sena's sentence by "an additional one-third for each count" of criminal sexual contact. A total of two years was thus added to Sena's sentence without any findings of fact by a jury.

On remand, we review Sena's arguments not reached by our previous consideration of this matter. *Sena I*, 2007-NMCA-115, ¶ 2. Sena asks us to reverse his conviction, arguing that: (1) the interview conducted by police in his home was improperly admitted into evidence, (2) Olguin's testimony that he wept was improperly admitted into evidence, (3) the State improperly presented suppressed evidence in its opening remarks, (4) the prosecutor's remarks to the jury during voir dire violated Sena's constitutional rights, (5) his conviction for criminal sexual contact

4

should have been dismissed, (6) his counsel was ineffective, (7) his sentence was improperly aggravated, and (8) he was denied a speedy trial and his sentencing hearing was improperly delayed. We now consider each in turn.

**DISCUSSION**

**1.      Police Interview at Sena's Home**

Sena first argues that the district court committed error when it admitted evidence obtained from a police interview with Sena in his home. He contends that he was not issued a warning under *Miranda v. Arizona*, 384 U.S. 436 (1966),which protects a defendant's right against compelled self-incrimination. Before interrogating persons in custody, law enforcement officers must inform them of their right to remain silent, the prospect that any statement they make may be used as evidence against them, and their right to an attorney. *Id.* at 444; *see State v. Munoz*, 1998-NMSC-048, ¶ 39, 126 N.M. 535, 972 P.2d 847.

To decide whether a suspect was subjected to a custodial interrogation, we ask—objectively—whether there was a "formal arrest or a restraint on freedom of movement of the degree associated with a formal arrest." *State v. Wilson*, 2007-NMCA-111, ¶ 14, 142 N.M. 737, 169 P.3d 1184. If a reasonable person in like circumstances would not have felt free to leave the area, the interrogation was custodial. *Munoz*, 1998-NMSC-048, ¶ 40. In analyzing whether a defendant felt free

to leave the area, courts may consider the purpose, place, and duration of the interrogation as well as "the extent to which the defendant [was] confronted with evidence of guilt, the physical surroundings of the interrogation, the duration of the detention, and the degree of pressure applied to the defendant" by police. *Id.*

Whether a person was interrogated in custody is a "mixed question of law and fact." *State v. Javier M.*, 2001-NMSC-030, ¶ 17, 131 N.M. 1, 33 P.3d 1. We review the district court's findings of fact for substantial evidence, and we apply a de novo standard to the district court's application of law, *State v. Attaway*, 117 N.M. 141, 144-45, 870 P.2d 103, 106-07 (1994), "viewing the facts in the light most favorable to the prevailing party." *State v. Bravo*, 2006-NMCA-019, ¶ 5, 139 N.M. 93, 128 P.3d 1070 (internal quotation marks and citation omitted).

Sena's motion to suppress evidence from the police interview at his home was heard on June 29, 2002. In that hearing, Sena's counsel stipulated that the interview was non-custodial but insisted that police were nevertheless required to read Sena a *Miranda* warning. Based on counsel's stipulation, the court denied Sena's motion to suppress and allowed the evidence to come in at trial.

The district court's ruling to deny Sena's motion to suppress was proper as a matter of law. As stated above, a *Miranda* warning is required only when a defendant is subjected to a *custodial* interrogation. *Miranda*, 384 U.S. at 444. Here, Sena

6

stipulated that his interrogation was non-custodial. In such a circumstance, the district court was left with no further legal basis upon which to grant the motion and therefore correctly admitted the evidence. Based on such facts, we hold that the interrogation was non-custodial, and we affirm the district court's denial of Sena's motion to suppress.

**2.      Testimony of Sena's Ex-Wife, Sandra Olguin**

Sena argues that he was denied a fair trial when the district court allowed Olguin's testimony concerning his behavior after being accused of molestation. At trial, Olguin testified that upon returning home on the day Sena learned of the charges against him, she observed Sena "in a fetal position on our recliner crying." Prior to trial, Sena filed a motion to suppress this evidence, asserting the marital privilege under Rule 11-505. The matter was argued in a hearing before the district court on July 29, 2002, in which the court recognized the applicability of the marital privilege and granted Sena's motion. At trial, the court enforced its ruling with regard to communications made by Sena but allowed Olguin to testify about Sena's behavior.

District courts have broad discretion to determine the admissibility of evidence at trial. *State v. Day*, 91 N.M. 570, 575, 577 P.2d 878, 883, 885 (Ct. App. 1978). Absent a clear abuse of discretion, this Court will not disturb such a determination. *State v. Teel*, 103 N.M. 684, 687-88, 712 P.2d 792, 795-96 (Ct. App. 1985). An abuse

of discretion occurs when a district court makes a ruling clearly against the logic and effect of the facts and circumstances in a case. In order to reverse a district court's evidentiary determination, we must hold that it acted in a way that was "clearly untenable or not justified by reason." *State v. Woodward*, 121 N.M. 1, 4, 908 P.2d 231, 234 (1995) (internal quotation marks and citation omitted).

Sena invokes Rule 11-505, which defines New Mexico's marital privilege. Section (B) gives parties to a marriage the power to prevent one another from disclosing "confidential communications." Rule 11-505(B). The rule states that a "confidential communication" is "made privately and not intended for further disclosure." Rule 11-505(A).

Both parties rely on *Teel*, in which our Supreme Court analyzed the meaning of "communication" as used in Rule 11-505. Teel, indicted for insurance fraud, invoked the marital privilege in order to prevent his wife from testifying that: (1) after he received money from the insurance company, she saw him wearing the ring he falsely claimed to have lost, (2) the signature on a disputed bank draft was his, and (3) a claim was filed with the insurance company. *Teel*, 103 N.M. at 685, 687, 712 P.2d at 793, 795. The district court held that only the first two were covered by the marital privilege, but the court excluded testimony on the third as well because it was entangled with privileged communications. Teel appealed, and this Court reversed,

8

holding that under the circumstances, "communication" could not be interpreted to include (1) wearing a diamond ring, (2) writing one's signature, or (3) filing a claim with an insurer. *Id.* at 687. Rule 11-505 limits the term "communication" to "utterances or expressive acts intended by one spouse to convey a meaning or message to the other." *Id.* at 686. As this Court also noted, a communication "may include an expressive act, [but] not every act observed by [the] defendant's spouse is a communication." *Id.* "Observations by one spouse of the non-communicative acts of the other . . . are not confidential communications." *Id.* at 686-87.

Sena has not demonstrated that the district court abused its discretion. Based upon *Teel*, we believe that the district court's decision in this case was reasonable. As discussed next, the district court disallowed much of Olguin's testimony under the marital privilege but allowed other testimony because it described non-communicative acts. Olguin testified that Sena was lying on a recliner, weeping, after being notified of the charges against him. To conclude that such testimony addressed non-communicative acts is both tenable and justified by reason; such testimony does not appear to us to reveal expressions intended "to convey a meaning." *Id.* at 686. Were we to conclude that it did, we would have to hold that Sena wept in order to communicate with his wife, perhaps to notify her that he was moved by the accusations against him, perhaps for some other reason. Although the relevance of

9

Sena's acts remains undefined, we deal here with the marital privilege. We hold that the privilege is not implicated on these facts, and we affirm the district court.

**3.     Presentation of Suppressed Evidence in the State's Opening**

The prosecutor's opening statement provides a more disturbing issue. Only minutes after the court prohibited the prosecution from addressing any communications between Sena and Olguin under the marital privilege, the prosecutor displayed a digital slide which contained the text of Olguin's suppressed statement that Sena revealed he had showered with the victim and touched the victim's vagina. The slide was only displayed momentarily before the prosecutor stepped in front of the projector, and the prosecutor did not orally present it, but it was nevertheless visible long enough for Sena's counsel to see it and lodge a motion for mistrial. The district court denied his motion on two bases: on the fact that the slide was visible only momentarily and on the court's finding that other witnesses would be testifying similarly. Sena argues that the court's decision reflects an abuse of discretion requiring reversal of his conviction.[1] We disagree.

We apply an abuse of discretion standard when reviewing denials of mistrials. "The decision whether to grant a mistrial rests within the sound discretion of the trial

---

[1] Sena has never asserted that the prosecutor's actions were intentional. In his brief, he surmises that the inclusion of this evidence was "apparently inadvertent."

court, and is reviewable only for an abuse of that discretion." *State v. Price*, 104 N.M. 703, 707, 726 P.2d 857, 861 (Ct. App. 1986). We follow such a rule because "the trial court was present, heard the comment, observed the context in which it was made, and gauged its effect, if any, on other members of the jury." Thus, we will interfere only "when there has been a clear showing of abuse." *Id.*

The parties do not dispute that the evidence presented by the State had been suppressed. But they do dispute its effect on the jury. In analyzing "the impact of the prosecutor's statement," we look primarily to "the context in which it was made." *State v. Gutierrez*, 2007-NMSC-033, ¶ 20, 142 N.M. 1, 162 P.3d 156. A prosecutor's opening statement should consist of "an objective summary of the evidence" that will be presented to the jury. *Id.* The prosecutor must not refer to "'evidence of questionable admissibility'" or evidence which will be "'unsupported at trial.'" *Id.* (quoting *United States v. Novak*, 918 F.2d 107, 109 (10th Cir. 1990)).

Upon these facts, we see no basis on which to disturb the ruling of the district court. The State's slide presentation included quotes from various witnesses the State planned to call. Specifically, as he displayed the slides, the prosecutor spoke of Detective Rod Jones, who would testify that Sena revealed he "showered naked with [the victim and] touched her vagina to put medicine on it[;]" of Sena's sister, who would testify that Sena told her he "showered naked with [the victim and] touched her

11

vagina[;]" and of another of Sena's sisters, who would also testify that Sena said he "showered naked [with and] touched [the victim's] vagina." Immediately after these statements, the State brought up its next slide, which displayed Olguin's comment that Sena revealed he had "showered naked [with the victim] and touched her vagina." With the slide visible, the following comments related the slide specifically to the context in which it had been suppressed:

> State:      You will hear from Sandra Olguin, the ex-wife and she heard [. . .]
>
> Sena:      Objection, Your Honor, now we need a conference with the judge.
>
>          . . . .
>
> [J]ust 10 minutes after you made a ruling that said we are not going to discuss, we are not going to introduce any evidence as to what Mr. Sena said to his wife, [the State] has up on his screen [what] she heard him say.

Noting his mistake during Sena's objection, the prosecutor quickly blocked the image on the screen from the jury's view. The parties then conferred with the court, and a few minutes later Sena's motion for mistrial was denied.

In its case in chief, as promised, the State called Detective Jones and Sena's two sisters to the stand, each testifying that Sena revealed he showered with the victim and touched her vagina. In this context, the district court's denial of Sena's motion was reasonable. The prosecutor is professionally and ethically responsible to present only

12

proper material for a jury's consideration. The State never read the statement from the slide, and the statement, although written plainly on the slide, was only visible momentarily. Admittedly, the prosecutor's failure to excise the slide from his presentation following the court's order was highly inappropriate. We do not condone it. But we find the consistency of the allowed testimonial evidence of the State's three witnesses substantially in concert with the suppressed statement. Their testimony, which *was* admissible, was compelling. In all, four State's witnesses were prepared to testify that Sena showered with and touched the victim's vagina, and the marital privilege barred only one of them. That the barred testimony came before the jury, then, was of little consequence, and its effect was made even more slight by its limited exposure to the jury. Based on this context, we cannot say that the district court's decision was a clear abuse of discretion, and we affirm.

**4.      Prosecutor's Statement During Voir Dire**

In his remarks to the jury during voir dire, the prosecutor stated, "This case is going to be mostly, or all, about one person's word against another." Sena immediately called for a mistrial and argued that the statement improperly implicated his constitutional right to refuse to testify. He asserted that the statement necessarily led the jury to believe he had an obligation to testify at trial. The district court denied Sena's motion and issued a limiting instruction telling the jury that Sena had no such

13

obligation. Sena now argues that the district court improperly denied his motion for mistrial and asks us to reverse. We refuse.

When a defendant alleges misconduct as a result of statements to the jury, we review the trial court's denial of a mistrial for abuse of discretion. *Price*, 104 N.M. at 707, 726 P.2d at 861. We follow such a rule because "the trial court was present, heard the comment, observed the context in which it was made, and gauged its effect . . . on . . . members of the jury." This Court will "only interfere when there has been a clear showing of abuse." *Id.*

Prosecutors may not comment on a defendant's Fifth Amendment right to remain silent, as such comments violate the defendant's privilege against self-incrimination. *Griffin v. California*, 380 U.S. 609, 613 (1965). In analyzing whether a particular prosecutorial comment implicates the Fifth Amendment in this way, New Mexico courts apply the test announced in *State v. Isiah*, 109 N.M. 21, 24, 781 P.2d 293, 296 (1989), *overruled on other grounds by State v. Lucero*, 116 N.M. 450, 453-54, 863 P.2d 1071, 1074-75 (1993). Courts must determine "whether the language used was manifestly intended to be or was of such a character that the jury would naturally and necessarily take it to be a comment on the accused's . . . [F]ifth [A]mendment rights to remain silent after arrest." *Id.* (internal quotation marks and citation omitted). In addition, courts must analyze the statement's context,

determining the speaker's "manifest intention" and the "natural and necessary impact" of the statement on jurors. *Id.*

Sena makes no clear showing of abuse of discretion on these facts; the prosecutor's comment does not "naturally and necessarily" implicate Sena's Fifth Amendment rights. The prosecutor made the statement during voir dire as he was discussing the testimony of the victim. Sena lodged an objection, and a bench conference was held so that the jury could not hear. When asked about the comment, the prosecutor stated that he was alluding only to evidence in his possession. This evidence, he continued, consisted of "hearsay admissions that will come in" as statements made by Sena. The court then overruled Sena's objection and issued a limiting instruction to inform the jury of Sena's absolute right to refrain from testifying. Although one could certainly interpret the State's remark to imply that Sena would testify at trial, an opposite interpretation remains equally plausible—namely, that Sena's "not guilty" plea represents his word against that of his accuser. If the remark referred only to evidence admissible under a hearsay exception, it would not violate Sena's rights. On this logic, the jury could have reasonably interpreted the remark to mean that Sena had simply denied the charges against him. We conclude therefore that the State's comment did not "naturally and necessarily" implicate Sena's Fifth Amendment rights, and we affirm.

**5.     Dismissal of Criminal Sexual Contact Conviction**

Sena argues next that because he was acquitted of criminal sexual penetration, he should also be automatically acquitted of criminal sexual contact, a lesser included offense.  We note that Sena's counsel advocates this argument pursuant to *State v. Franklin*, 78 N.M. 127, 129, 428 P.2d 982, 984 (1967), and *State v. Boyer*, 103 N.M. 655, 658-60, 712 P.2d 1, 4-6 (Ct. App. 1985).

Sena was indicted for first-degree criminal sexual penetration of a minor and the lesser included offense of third-degree criminal sexual contact of a minor. Criminal sexual penetration of a minor is the (1) unlawful and intentional (2) causing of a person to engage in sexual intercourse, cunnilingus, fellatio, or anal intercourse or the causing of penetration, to any extent and with any object (3) of the genital or anal openings of a person under thirteen years old.  § 30-9-11(A), (C), (D)(1). Criminal sexual contact of a minor is the (1) unlawful and intentional (2) touching of or applying force to (3) the intimate parts of a person under thirteen years old—or (1) the unlawful and intentional (2) causing of a person under thirteen years old (3) to touch one's genital area, groin, buttocks, anus, or breast.  § 30-9-13(A)(B).

A lesser included offense is one that is "necessarily included in the offense charged." NMSA 1978, § 20-12-14 (1989).  And in the present case, this would mean that *anyone who commits the crime of criminal sexual penetration automatically*

*commits the crime of criminal sexual contact.* The converse does not hold. For instance, a person guilty of criminal sexual contact is not automatically guilty of criminal sexual penetration because the elements of criminal sexual penetration are more specific. Equally preposterous is Sena's assertion that a person innocent of criminal sexual penetration is likewise innocent of criminal sexual contact. The elements of criminal sexual contact are less specific than the elements of criminal sexual penetration. We reject Sena's contention.

**6.      Ineffective Assistance of Counsel**

We next address Sena's contention that he should receive a new trial due to ineffective assistance of counsel. He alleges that his attorney did not provide him with discovery, failed to make proper objections, refused to call the proper witnesses, did not adequately investigate the case, and failed to make the proper arguments at trial. Again, Sena's counsel on appeal cites *Franklin* and *Boyer* in advocating Sena's argument. *Franklin*, 78 N.M. at 129, 428 P.2d at 924; *Boyer*, 103 N.M. at 658-60, 712 P.2d at 4-6.

We review allegations of ineffective assistance of counsel de novo. *Duncan v. Kerby*, 115 N.M. 344, 347-48, 851 P.2d 466, 469-70 (1993). Such claims involve questions of law or mixed questions of law and fact. *Id.*

We require parties to meet a two-fold standard in cases of ineffective assistance.

17

First, a party must demonstrate that "counsel's performance fell below that of a reasonably competent attorney." Second, the party must show that the attorney's failure "prejudiced the defense." *State v. Hester*, 1999-NMSC-020, ¶ 9, 127 N.M. 218, 979 P.2d 729 (internal quotation marks omitted) (quoting the landmark case of *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384. The burden of proof rests on the party claiming ineffective assistance. *Hester*, 1999-NMSC-020, ¶ 9.

The record before us does not support Sena's claim. Simply put, it contains neither adequate information nor sufficient data to prove *Strickland's* two prongs. The record provides the foundation on which we decide an ineffective assistance claim. *State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61; *State v. Swavola*, 114 N.M. 472, 475, 840 P.2d 1238, 1241 (Ct. App. 1992). The record here remains insufficient to support Sena's claims.

Furthermore, Sena's argument before this Court fails to state *how* the conduct of his attorney prejudiced his defense. On appeal, a defendant must demonstrate a reasonable probability that the result of his trial would have been different if not for the attorney's deficient conduct. *State v. Taylor*, 107 N.M. 66, 73, 752 P.2d 781, 788 (1988) (citing *Strickland*, 466 U.S. at 687), *overruled on other grounds by Gallegos v. Citizens Ins. Agency*, 108 N.M. 722, 731, 779 P.2d 99, 108 (1989). Sena makes no

18

such showing in his brief, and this Court will not "search the entire record" to harvest facts and arguments because Sena "fail[ed] to cite the instances complained of within the context of the proceeding" in the district court. *Marchese v. Warner Commc'ns, Inc.*, 100 N.M. 313, 320, 670 P.2d 113, 120 (Ct. App. 1983).

In fact, the information that does appear in the record indicates that Sena's counsel acquitted himself well. He filed a variety of pretrial motions to suppress evidence, assert privileges, and obtain forensic evaluation. At trial, he called witnesses on Sena's behalf. He extensively cross-examined eight State's witnesses and made timely objections to preserve issues for appeal.

Finally, we regard instances of attorney conduct that can be found in the record as primarily tactical decisions, which we do not review. *Hester*, 1999-NMSC-020, ¶¶ 11, 13, 15. Our Supreme Court has noted that "[i]t is not the role of this Court on appeal to second-guess trial tactics." *Id.* ¶ 11. The issue of ineffective assistance is open, however, if Sena decides to pursue it collaterally. Our Supreme Court has indicated New Mexico's preference for habeas corpus proceedings for the purpose of addressing ineffective assistance of counsel claims. *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494. "If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." *Roybal*, 2002-NMSC-027, ¶ 19.

**7.     Improper Aggravation of Sena's Sentence**

Sena next argues that his sentence was improperly aggravated pursuant to NMSA 1978, § 31-18-15.1(A) (1993).  We agree.

In *Frawley*, the New Mexico Supreme Court recognized "that the Sixth Amendment is violated *any time* a defendant is sentenced above what is authorized *solely* by the jury's verdict alone" and that "a judge may not alter the basic sentence upwards without affirmatively establishing facts."  *Id.* ¶ 23.  The Court also held that Section 31-18-15.1 was facially unconstitutional "because, as written, it [could] never be applied . . . consistent with the Sixth Amendment."  *Id.* ¶ 25.  Holding that its opinion constituted a new rule of law, the Court chose to apply it only prospectively.  *Id.* ¶ 44.  We note that in New Mexico prospective rules apply only to cases pending in district court or on direct review at the time of the new rule's publication.  *Id.* ¶ 34; *see Jackson v. State*, 1996-NMSC-054, ¶ 5, 122 N.M. 433, 925 P.2d 1195.  The filing of *Sena I* preceded that of *Frawley* by four months, and was on direct appeal when *Frawley* was handed down.  Thus, in a case such as this where the district court found aggravating circumstances not previously found by the jury and, taking them into account, increased Sena's sentence, the jury was required to find those facts.  We reverse the aggravation of his sentence.

**8.     Denial of Speedy Trial and Delay of Sentencing**

20

Finally, Sena argues that he was denied a speedy trial and that his sentencing was unlawfully delayed. Sena's counsel again cites *Franklin* and *Boyer* in raising Sena's argument on this issue. *Franklin*, 78 N.M. at 129, 428 P.2d at 984; *Boyer*, 103 N.M. at 658-60, 712 P.2d at 4-6. Because Sena failed to preserve these issues in the district court, we do not consider them.

In order to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon. *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280. On appeal, this Court will not consider issues that were not raised in the district court unless they involve matters of fundamental rights or fundamental error. *In re Aaron L.*, 2000-NMCA-024, ¶ 10, 128 N.M. 641, 996 P.2d 431.

To determine whether a defendant's right to a speedy trial was violated, the "reviewing court must consider . . . whether the defendant asserted his right to a speedy trial," as outlined in *Barker v. Wingo*, 407 U.S. 514, 530 (1972); *State v. Rojo*, 1999-NMSC-001, ¶¶ 49-52, 126 N.M. 438, 971 P.2d 829. Here again, Sena's counsel cites *Franklin*, 78 N.M. at 129, 428 P.2d at 984, and *Boyer*, 103 N.M. at 658-60, 712 P.2d at 4-6. Sena neither requested a hearing nor made an objection on this issue, and it is therefore unpreserved. "[W]here the defendant does not raise the constitutional

speedy trial issue in the [district] court, there is nothing for an appellate court to review." *Id.* ¶ 51.

Sena also failed to preserve the issue of his delayed sentence, which he asserts violated Rule 5-701(B) NMRA. Sena's counsel cites *Franklin* and *Boyer* in raising Sena's argument on this issue as well. *Franklin*, 78 N.M. at 129, 428 P.2d at 984; *Boyer*, 103 N.M. at 658-60, 712 P.2d at 4-6. Sena's brief indicates no time at which he raised an objection to any delay in his sentencing, and our examination of the record likewise reveals none. As a result, the district court was never given a chance to treat the issue, and we refuse to review it.

**CONCLUSION**

Based on our analysis above, we reverse the aggravation of Sena's sentence. We hold that the record and pleadings before us are inadequate to determine whether Sena's trial counsel was ineffective, but this matter is open if Sena decides to pursue it collaterally. We affirm on all remaining issues.

**IT IS SO ORDERED.**

_____

**RODERICK T. KENNEDY, Judge**

**WE CONCUR:**

22

_____

**CYNTHIA A. FRY, Chief Judge**


_____

**MICHAEL E. VIGIL, Judge**