726 P.2d 857
**STATE of New Mexico,**
**Plaintiff-Appellee,**

v.

**John Walter PRICE,**
**Defendant-Appellant.**

**No. 8726.**

Court of Appeals of New Mexico.

April 10, 1986.

Certiorari Quashed Oct. 15, 1986.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Paul G. Bardacke, Atty. Gen., William McEuen, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

BIVINS, Judge.

Convicted of attempted murder in the first degree and armed robbery, both with firearm enhancement, defendant appeals, raising three issues:

1. Whether a crime exists for attempted felony murder, and, if no crime exists, whether reprosecution of defendant for first-degree murder is precluded under double jeopardy.

2. Whether the trial court erred in refusing to grant a mistrial after a juror asked if it was safe to leave the "gun and shells" within reach of defendant.

3. Whether defendant was ineffectively assisted by counsel where trial counsel failed to ask the court to voir dire the juror identified above and failed to ask the court to excuse the juror.

We answer these issues by holding that no crime exists for attempted felony murder; because attempted felony murder was an improper charge, the court lacked jurisdiction over Count I and, therefore, double

jeopardy does not arise; the court committed no error in refusing to grant a mistrial based on the juror's comment; and the record does not support a finding of ineffective assistance of counsel. Accordingly, we reverse the conviction of attempted first-degree murder, and affirm the conviction of armed robbery. We remand with instructions.

Viewing the evidence in a light most favorable to the verdicts convicting defendant, *State v. DeSantos*, 89 N.M. 458, 553 P.2d 1265 (1976), the proof reflects that between 7:00 and 8:00 p.m., on January 18, 1984, defendant entered a service station in Santa Rosa on three occasions. Leonard Foust, the attendant, was watching television because business was slow. On the first occasion, defendant attempted to cash a check but was refused. Five or ten minutes later, defendant returned and asked for the restroom key. After apparently using the restroom, he left and returned, again asking for the key. Defendant took the key and walked around the building, but then quickly returned to the office. He pulled out a revolver, ordering Foust to open the cash register. As defendant left with the cash, he paused in the doorway, aimed his revolver at Foust's head, and fired once. The bullet entered Foust's right cheek and exited his head, behind the right ear. He survived and later identified defendant as the assailant and robber.

ATTEMPTED FELONY MURDER

In his brief-in-chief, defendant argues that the crime of attempted felony murder does not exist. In so arguing, he relies on our holding in *State v. Johnson*, 103 N.M. 364, 707 P.2d 1174 (Ct.App.), cert. quashed, 103 N.M. 344, 707 P.2d 552 (1985), that the crime of attempted depraved mind murder does not exist because of the logical impossibility of intending to commit an unintentional crime. Because felony murder contains no *mens rea* requirement, defendant similarly contends that a felony murder cannot be intentionally committed. The state counters that, unlike depraved mind murder, a felony murder can be intentionally committed. Because there was evidence

of an attempt to commit intentional murder and the jury was properly instructed, the state argues that defendant's conviction should be upheld.

Technically, the state is correct in its assertion that a felony murder can be intentionally committed. The felony murder doctrine evolved as a response to the realization that inherent in the commission of dangerous felonies is the possibility that death can occur. *State v. Harrison*, 90 N.M. 439, 564 P.2d 1321 (1977); *Head v. State*, 443 N.E.2d 44 (Ind.1982). When a death occurs during the commission of an inherently dangerous felony, the prosecution bears no burden of proving intent to kill. *Id.* Rather, the requisite malice aforethought can be inferred from the commission or attempted commission of the felony. *Id.* Thus, the determination of whether felony murder has been properly charged does not turn on whether the murder was intentionally or unintentionally committed; felony murder simply contains no *mens rea* requirement.

Felony murder, therefore, substantively differs from depraved mind murder. A charge of depraved mind murder "expressly excludes a specific intent to kill a specific person." *State v. Johnson*, 103 N.M. at 368, 707 P.2d at 1178. Because an attempt conviction requires a showing of specific intent, there is an inherent conflict between the elements of attempt and depraved mind murder. *Id.*

The majority of courts have refused to recognize the crime of attempted felony murder. *See Head v. State; People v. Franklyn*, 157 Cal.App.3d 518, 203 Cal. Rptr. 813 (1984); *People v. Viser*, 62 Ill.2d 568, 343 N.E.2d 903 (1975); *People v. Hassin*, 48 A.D.2d 705, 368 N.Y.S.2d 253 (1975); *Commonwealth v. Griffin*, 310 Pa.Super. 39, 456 A.2d 171 (1983). *Cf. Amlotte v. State*, 456 So.2d 448 (Fla.1984) (holding that if in commission of a felony, a specific act is committed which could, but does not, result in the death of another, the specific intent to kill will be presumed); *White v. State*, 266 Ark. 499, 585 S.W.2d 952 (1979) (attempted murder possible where attempt

not defined as requiring intent to commit a felony).

Most of the courts which have rejected recognition of attempted felony murder refused to expand the inferred malice in felony murder to the proof of specific intent necessary to sustain an attempt conviction. *Head v. State; People v. Franklyn; Commonwealth v. Griffin. See People v. Collie,* 30 Cal.3d 43, 177 Cal.Rptr. 458, 634 P.2d 534 (1981); *People v. Harris,* 72 Ill.2d 16, 17 Ill.Dec. 838, 377 N.E.2d 28 (1978). The same rationale runs through each holding: the crime of attempted murder requires specific intent to kill. Thus, intent must be proven; it cannot be inferred solely from the commission of a dangerous felony.

The case before us, however, differs in its posture from the cases cited above. In some of those cases, the juries were not instructed to find a specific intent to kill. The intent could be derived from the commission of the felony. *Head v. State; Commonwealth v. Griffin.* In other cases, the juries were instructed on implied and express malice, resulting in guilty verdicts possibly without a finding of specific intent to kill. *People v. Franklyn; see People v. Collie.*

In our case, however, the jury was clearly instructed that in order to find defendant guilty of attempted murder, it had to find that defendant intended to kill. The precise language of the jury instruction was as follows:

> For you to find the defendant guilty of an attempt to commit Murder in the First Degree * * * the State must prove to your satisfaction beyond a reasonable doubt each of the following elements of the crime:
>
> 1. The defendant *intended to commit the Murder;*
> 2. The defendant began to do an act which constituted a substantial part of the murder but failed to commit the murder;
> 3. This happened in New Mexico on or about the 18th day of January, 1984.

*See* NMSA 1978, UJI Crim. 28.10 (Repl. Pamp.1982) (emphasis added).

Thus, the court instructed the jury that it had to find beyond a reasonable doubt that defendant intended to kill the victim, and the jury made such a finding. The state, therefore, makes a cogent argument in favor of recognition here of the crime of attempted felony murder.

Strong policy considerations, however, persuade us not to recognize the crime. First, the felony murder doctrine is a result-oriented doctrine. It is a legislative creation designed to make felons strictly responsible for deaths occurring during the commission or attempted commission of inherently dangerous felonies. *People v. Hassin.* The doctrine has no applicability where there is no death. *Head v. State.*

Additionally, felony murder is not a popular doctrine. The source of its unpopularity is the legal presumption that a defendant intended to kill. *Head v. State.* Courts, commentators, and legislatures alike adhere to the belief that the prosecution should bear the burden of proving that the defendant possessed the necessary aforethought or *mens rea. See People v. Aaron,* 409 Mich. 672, 299 N.W.2d 304 (1980).

Accordingly, England entirely abandoned felony murder in 1957. Homicide Act, 1957, 5 & 6 Eliz. 2, c. 11, § 1. Now, in England, malice aforethought must be proven in order to sustain any murder conviction. *Head v. State.* Likewise, in the United States, the trend has been to narrow the application of the felony murder doctrine. *Id.; People v. Aaron.* Some jurisdictions have abolished the application of the doctrine. *See* 7A Hawaii Rev.Stat. § 707–701 (Repl.1976); 16A Ky.Rev.Stat. § 507.020 (Repl.1985). Other jurisdictions have reduced the degree of murder and punishment for felony murder. *See* Alaska Stat. §§ 11.41.110 and 11.41.115 (1985); 9 La.Rev.Stat.Ann. § 14:30.1 (West Supp. 1986); Minn.Stat.Ann. § 609.185 (West 1984); N.Y. Penal Law § 125.25 (Consol. 1984); Ohio Rev.Code Ann. § 2903.04 (Page 1984 Supp.); 18 Pa.Cons.Stat.Ann. § 2502

(Purdon 1983); Utah Code Ann. § 76–5–202 (Interim Supp.1984). In New Mexico, the supreme court limited the applicability of the felony murder doctrine, holding that the doctrine shall not be invoked unless the murder occurred during the commission or attempted commission of a felony which carries with it a high probability of death. *State v. Harrison.*

■ Thus, the result-oriented nature of the doctrine and the unpopularity of felony murder are among the concerns which persuade us not to recognize the crime of attempted felony murder. To acknowledge the crime would entail broadening the scope of the felony murder doctrine when the trend has been to narrow or to abolish the applicability of the doctrine.

In refusing to accept attempted felony murder as a crime, we also have compared the burden of proof imposed upon the state, if we recognized the crime, with the burden of proof otherwise imposed. If, for instance, the state had charged defendant with willful, deliberate, and premeditated murder, it would have had to prove not only specific intent to murder but also, as an element of the substantive offense, that defendant acted "with the deliberate intention to take away the life" of the attendant. NMSA 1978, UJI Crim. 2.00 (Repl.Pamp. 1982). In comparison, in charging attempted felony murder, the state need only prove specific intent to commit murder as an element of the attempt charge. *Compare* UJI Crim. 28.10 (attempt to commit a felony) *and* NMSA 1978, UJI Crim. 2.04 (Repl. Pamp.1982) (felony murder).

Both instructions, however, charge defendant with an attempt to commit first-degree murder. In the first instruction, the state would be required to prove beyond a reasonable doubt that defendant *deliberately* intended to kill the victim. UJI Crim. 2.00 (emphasis added). Because felony murder has no *mens rea* element, the state would bear a lighter burden of proof when it elects to charge attempted felony murder rather than attempted willful, deliberate, and premeditated murder. Even though the state bears this lesser burden, it still

would be able to obtain an attempted first-degree murder conviction.

We cannot sanction this result. When attempted first-degree murder is charged, the state must meet its full burden of proof.

Finally, our recognition of the crime of attempted felony murder simply is not necessary for the prosecution of defendant. The state could have charged defendant with more appropriate crimes. An enumeration of those crimes is not necessary. Suffice it to say that the state was not required, most likely unwittingly, to carve out a new crime in order to prosecute defendant. Other prosecutorial avenues were available.

For the reasons stated above, we hold that the crime of attempted felony murder does not exist. Accordingly, we reverse defendant's conviction of attempted felony murder.

## DOUBLE JEOPARDY

We now turn to the double jeopardy question raised. Count I charged defendant with "the offense of Attempted Murder in the First Degree in that the Defendant *intentionally* attempted to cause the death of Leonard Foust during the commission of, or the attempted commission of, Armed Robbery * * *." (Emphasis added.) The information only mentioned NMSA 1978, Section 30–2–1 (Repl.Pamp.1984) generally, and did not specify by letter or number any subsection. Defendant argues that because the information did not specifically preclude other theories of first-degree murder, jeopardy attached as to all theories. Thus, defendant contends that his conviction should be reversed, and the case remanded for retrial on, at most, the lesser included offense of attempted second-degree murder.

The information does refer to intent to commit murder, which is pertinent to the deliberate murder, but not to felony murder; nevertheless, when considered in light of the jury instructions, defendant was charged in Count I only with attempted felony murder. The trial court's instruc-

tion No. 2, on attempt to commit a felony, tracked UJI Crim. 28.10. *See* NMSA 1978, § 30–28–1 (Repl.Pamp.1984). Instruction No. 3 sets forth the elements of felony murder which essentially follow UJI Crim. 2.04. The jury returned a guilty verdict on Count I, attempted murder in the first degree.

The crime of attempt to commit a felony is a specific intent crime. *State v. Johnson.* As we have already pointed out, criminal intent is not required for felony murder. Thus, when instructions Nos. 2 and 3 are read together, they form instructions on attempted felony murder, which we have held does not exist.

■ Because attempted felony murder was not a proper charge, the trial court lacked jurisdiction over Count I. *State v. Mabrey,* 88 N.M. 227, 539 P.2d 617 (Ct.App. 1975). Because the trial court lacked jurisdiction, there is no basis for a claim of double jeopardy. *Id.; Trujillo v. State,* 79 N.M. 618, 447 P.2d 279 (1968); *State v. Paris,* 76 N.M. 291, 414 P.2d 512 (1966). Therefore, on remand, the state is not precluded from refiling and charging defendant with attempt to commit first-degree murder of the willful, deliberate and premeditated variety or with any lesser included offense.

This is not like *State v. Johnson* where the state charged defendant on an open charge of murder. Defendant here was charged and tried under Count I for a nonexistent crime. Therefore, the state is free to recharge him under an appropriate information.

## JUROR MISCONDUCT

Following one of the prosecutor's final questions on cross-examination of defendant, asking him to identify the revolver in evidence, a juror interrupted the proceeding and stated: "Your honor, if the court will permit me, there is a gun and shells within reach of this individual. Is that safe?" The trial court thanked the juror. The prosecutor said he had no further questions, and defendant requested a short recess. Upon resumption of the proceedings, defendant moved for a mistrial on the basis that the juror's comments indicated, before having heard all of the evidence, a bias against defendant. He also argued that the comment might prejudice other jurors. The trial court denied the motion. Upon return, the trial court instructed the jury to disregard the comment made by the juror and not to consider it in its deliberations. Defendant called one more witness and rested. The state had no rebuttal. The trial court instructed the jury, and counsel made their closing summations.

Defendant claims that because the juror made the comment before the close of trial, the trial court's instruction to keep an open mind and not to decide the case until submission did not cure the juror impropriety. NMSA 1978, UJI Crim. 1.00 (Cum.Supp. 1985). Further, defendant argues that the comment defeats the presumption of innocence. NMSA 1978, UJI Crim. 40.60 (Repl. Pamp.1982). Thus, claims defendant, the comment clearly demonstrates that because the evidence in the record provided no other basis for the juror's fear of defendant, the "comment can only mean that [the juror] had already reached the conclusion that [defendant] was guilty of the charges." He claims this misconduct deprived him of a trial by a fair and impartial jury as guaranteed by the United States and New Mexico Constitutions. U.S. Const. amends. VI and XIV, § 1; N.M. Const. art. II, §§ 14 and 18; *State v. McFall,* 67 N.M. 260, 354 P.2d 547 (1960). Defendant claims the trial court erred in not granting a mistrial.

The decision whether to grant a mistrial rests within the sound discretion of the trial court, and is reviewable only for an abuse of that discretion. *State v. Simonson,* 100 N.M. 297, 669 P.2d 1092 (1983); *State v. Gardner,* 103 N.M. 320, 706 P.2d 862 (Ct.App.1985). The reason for this rule is that the trial court was present, heard the comment, observed the context in which it was made, and gauged its effect, if any, on other members of the jury. A reviewing court will only interfere when there has been a clear showing of abuse.

In cases involving improper communications with the jury, New Mexico courts have applied the presumption of prejudice test. *See generally Budagher v. Amrep Corp.*, 100 N.M. 167, 667 P.2d 972 (Ct.App. 1983) (summarizing the cases and applying the test). Where there is an improper communication with the jury by the trial court outside the defendant's presence, a presumption of prejudice arises which the state has the burden of overcoming. *See, e.g., State v. McClure*, 94 N.M. 440, 612 P.2d 232 (Ct.App.1980). Similarly, any unauthorized contact between the prosecution and the jury is presumptively prejudicial. *State v. Ho'o*, 99 N.M. 140, 654 P.2d 1040 (Ct.App.1982). In contrast, defendant complains of juror conduct, which occurred in open court, in defendant's presence. On these facts, no presumption arose; defendant has the burden of demonstrating prejudice.

In *State v. Cypher*, 92 Idaho 159, 438 P.2d 904 (1968), a case cited by defendant, a juror commented, during closing argument, to the effect that if defendants were guilty they should throw themselves on the mercy of the court. While acknowledging the impropriety of a juror expressing an opinion before submission of the case, the court determined that the comment was insufficiently indicative of bias so as to require reversal. Thus, a mere expression of opinion by a juror, based on testimony and not indicating any prejudice, does not suggest bias or prejudice against either party. *Id.*

▪ We believe the rule adopted in *State v. Cypher* is appropriate to the circumstances of the case before us. In this case, the juror's comment clearly came after most of the evidence in the case had been presented. Only the testimony of an alibi witness remained for presentation to the jury at the time of the juror's comment. Much of the evidence which the juror had heard at the time of this comment indicated that defendant was a dangerous person. This evidence was to the effect that defendant may have shot the victim in the face at point-blank range during the commission of

an armed robbery. The jury had also heard evidence of defendant's previous convictions for escape from jail, battery on a police officer, conspiracy and unlawful taking of a vehicle. The juror's comment, therefore, was apparently made with reference to evidence that he had heard. The context in which the comment was made is not necessarily indicative of juror bias or prejudice of the sort which would indicate that the juror was not an impartial juror. *Cypher.* Although it was improper for the juror to express, in open court, his assessment that defendant might be dangerous, the comment is not indicative of bias or prejudice to the extent necessary to require a mistrial. *Cypher.*

Even though the other jurors heard the comment, there is no indication that such a comment served to prejudice the other jurors. Under the circumstances, the trial court's admonition was adequate to cure any prejudice that may have arisen. *See State v. Ferguson*, 77 N.M. 441, 423 P.2d 872 (1967).

The circumstances of the present case are distinguishable from *State v. Perea*, 95 N.M. 777, 626 P.2d 851 (Ct.App.1981), where a newspaper containing an article about the case prompted a juror to write a note of apology to the trial court. This court held that the note, in which the juror expressed the " 'hope' " that her " 'mistake will not cause a mistrial or undue acquittal' " was susceptible of only one meaning: "there existed a preconceived opinion of defendant's guilt in one juror's mind, and that opinion was made known to every other juror at a stage of trial when only the State's case had been heard." *Id.* at 779, 626 P.2d at 853. We held that a mistrial should have been granted. The comment here came at or near the conclusion of all the evidence, did not evince an opinion as to defendant's guilt, and was supported by the evidence.

In conclusion, we hold that, although the juror's conduct was improper, it did not sufficiently demonstrate bias or prejudice so as to require a mistrial.

INEFFECTIVE ASSISTANCE OF COUNSEL

Twelve jurors and one alternate were chosen to decide this case. Although defense counsel moved for a mistrial, based on the juror's comment discussed above, he did not ask the trial court to voir dire the juror or to excuse the juror. Defendant argues on appeal that counsel's omissions amounted to ineffective assistance of counsel. He raises this issue as fundamental error.

The benchmark for analyzing ineffectiveness claims is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–93 (1984). In order to establish ineffectiveness, defendant must satisfy a two-pronged test. *Id.* First, defendant must show that counsel's performance was deficient. Deficient performance is measured in New Mexico by " 'the skill, judgment and diligence of a reasonably competent defense attorney.' " *State v. Orona*, 97 N.M. 232, 233, 638 P.2d 1077, 1078 (1982). Second, defendant must make a showing of prejudice. Prejudice is measured by "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington*, 466 U.S. at 695, 104 S.Ct. at 2069, 80 L.Ed.2d at 698. In determining prejudicial effect, we must consider "the totality of the evidence before the judge or jury." *Id.*

Although defense counsel failed to request voir dire of the juror whose conduct we have reviewed, or that the juror be excused, counsel did move for a mistrial. Our review of the record indicates the comment was made with reference to the evidence and did not indicate sufficient bias to justify a mistrial. Under these circumstances, we are not persuaded that counsel's performance was deficient as opposed to counsel's making an error in judgment.

The latter is not sufficient. *See State v. Orona.*

Defendant, however, clearly fails to satisfy the second prong of the *Strickland* test. In order to determine prejudice, we must analyze the "totality of the evidence." As the state argues, the evidence presented against defendant was overwhelming. Therefore, defendant did not show that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 693, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

In holding that defendant's counsel was ineffective, we recognize that in some situations counsel's acts or failures to act are presumptively prejudicial. *Strickland v. Washington; United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 2047 n. 24, 80 L.Ed.2d 657, 667–68 n. 24 (1984). The following are exemplary of situations giving rise to a presumption of prejudice: actual conflicts of interest; counsel's total absence from a proceeding; and counsel's failure to represent the client during a critical stage of the trial. *United States v. Cronic.* In these situations, counsel has breached his fundamental duty of loyalty to his client, or failed to provide adversarial representation, and the resulting prejudice defies accurate measurement.

Counsel's failures here to act were not presumptively prejudicial. He did not breach a duty of loyalty to defendant. He was present, and he moved for a mistrial. His conduct does not fit within the situations which give rise to a presumption of prejudice. Therefore, we reject the claim of ineffective assistance of counsel.

We affirm the conviction of armed robbery with firearm enhancement. We reverse the conviction of attempted felony murder and remand for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID and MINZNER, JJ., concur.