This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v. **NO. 28,437**

**TIMOTHY SANDOVAL,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF VALENCIA COUNTY**
**John W. Pope, District Judge**

Gary K. King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

David Henderson
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**GARCIA, Judge.**

Timothy Sandoval (Defendant) appeals his conviction for the second-degree murder of Jeff McCormick (McCormick), contrary to NMSA 1978, Section 30-2-1(B)

(1994). Defendant raises six issues on appeal: (1) the district court abused its discretion by limiting evidence of a past altercation between Defendant and the alleged victims; (2) the jury instructions for self-defense and defense of another were an incorrect statement of law and constituted fundamental error; (3) prosecutorial misconduct constituted fundamental error; (4) the district court erred in failing to conduct an evidentiary hearing regarding improper influence on the jury and juror bias; (5) the district court erred in denying Defendant's request for a stipulation of fact to the content of allegedly lost evidence; and (6) cumulative error occurred. In a previous Opinion, this Court concluded that an error in the jury instructions constituted fundamental error, reversed Defendant's convictions, and remanded for a new trial. *State v. Sandoval,* 2010-NMCA-025, ¶ 34, 147 N.M. 465, 225 P.3d 795, *rev'd by* 2011-NMSC-022, 150 N.M. 224, 258 P.3d 1016 *(Sandoval I)*. Our Supreme Court subsequently reversed this Court's determination that the error in the jury instructions constituted fundamental error and remanded this case to this Court to consider the remaining issues raised by Defendant on appeal. *Sandoval I* , 2011-NMSC-022, ¶ 30. We affirm Defendant's conviction.

**BACKGROUND**

Defendant was charged with (1) one open count of murder as to Ross "Chino" Ramos (Ramos); (2) one open count of murder as to McCormick; (3) one attempted open count of murder as to James Arbizu (Arbizu); and (4) tampering with evidence.

2

The State dismissed the attempted murder charge prior to trial, and the district court directed a verdict of acquittal on the tampering charge. The jury acquitted Defendant of the murder of Ramos, but convicted him of second-degree murder as to McCormick. The jury also found Defendant guilty of using a firearm to commit the crime. Defendant now appeals his second-degree murder conviction as to McCormick.

**DISCUSSION**

**Evidence Regarding the Prior Altercation**

Defendant argues that the district court abused its discretion by limiting the testimony of Hector Munoz, Sr. (Munoz), and Arbizu regarding a prior altercation involving Arbizu and Ramos or their families. We review a district court's admission or exclusion of evidence for an abuse of discretion. *State v. Armendariz*, 2006-NMSC-036, ¶ 6, 140 N.M. 182, 141 P.3d 526. "An abuse of discretion arises when the evidentiary ruling is clearly contrary to logic and the facts and circumstances of the case." *Id.*

Pursuant to Rule 11-404(A)(2) NMRA, a defendant may introduce evidence of a pertinent character trait of the victim. Rule 11-405(A) NMRA generally requires proof be in the form of reputation or opinion testimony. Specific instances of conduct are admissible where the victim's character is an essential element of a charge, claim, or defense. Rule 11-405(B). However, Rule 11-403 NMRA provides that even

3

relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."

Whether evidence of a victim's prior bad acts is admissible depends on the purpose for which it is offered. *See State v. Gallegos*, 2007-NMSC-007, ¶ 22, 141 N.M. 185, 152 P.3d 828 (reasoning that Rule 11-404(B) requires "the proponent of the evidence . . . to identify and articulate the consequential fact to which the evidence is directed before it is admitted"). In *Armendariz*, our Supreme Court clarified that where a defendant claims self-defense, "evidence of specific instances of the victim's prior violent conduct of which the defendant was aware may be admitted to show the defendant's fear of the victim." 2006-NMSC-036, ¶ 17. However, "evidence of specific instances of a victim's prior violent conduct may not be admitted to show that the victim was the first aggressor." *Id. Armendariz* further clarified that "a victim's violent character is not an essential element of a defendant's claim of self-defense, but rather circumstantial evidence that tends to show that the victim acted in conformity with his or her character on a particular occasion." *Id.* As a result, Rule 11-405(B) permits only reputation or opinion evidence, and not specific instances of prior conduct, to prove the victim was the first aggressor. *Id.*

When questioned by the district court about the relevance of Munoz's

4

testimony, Defendant explained, "There's continued animosity between [the Ramos] family directed toward the Munoz family. And there's one particular occasion where [Munoz] would testify . . . that [Defendant] and [Munoz's son] were walking down the road, and these individuals came out and threatened them." The court ruled that the testimony was inadmissible for this purpose. In a motion for a new trial, Defendant argued that the district court erred by excluding Munoz's testimony. Defendant asserted that Munoz would have testified that "he had personally observed members of the Arbizu and Ramos family verbally accosting Defendant and discharging firearms in the air." Defendant further asserted that when "speaking to some jurors after the trial, several jurors indicated that had they had some background information on the prior incident and the *propensity of the alleged victims towards violence*, [and that] this [testimony] would have substantially influenced their thinking." (Emphasis added.)

We conclude that Defendant failed to identify and articulate a consequential fact other than propensity for admitting Munoz's testimony regarding the prior bad acts of the alleged victims. *See Gallegos*, 2007-NMSC-007, ¶ 22. Defendant argued that Munoz's testimony was relevant because it would show that the alleged victims threatened Defendant during a prior incident and "the propensity of the alleged victims towards violence[.]" However, these purposes fall squarely under the holding in *Armendariz*, prohibiting a court from admitting specific instances of a victim's

5

prior violent conduct to show the victim's propensity toward violence or that the victim was the first aggressor. *See* 2006-NMSC-036, ¶ 17. As a result, we conclude that the district court did not abuse its discretion in excluding Munoz's testimony.

On appeal, Defendant presents two new theories as to why the district court erred in excluding Munoz's testimony: (1) it was relevant to show the basis of Defendant's fear of the alleged victims; and (2) it became admissible after Arbizu opened the door by referring to the prior incident. Defendant, however, failed to raise these arguments of admissibility below, and we decline to consider them on appeal. *See Gallegos*, 2007-NMSC-007, ¶ 25 (reasoning that the proponent of Rule 11-404(B) evidence must "identify and articulate the consequential fact to which the evidence is directed" as well as "cogently inform the court . . . [of] the rationale for admitting the evidence to prove something other than propensity").

Defendant further argues that the district court foreclosed a defense by preventing Defendant from fully cross-examining Arbizu regarding the prior altercation and whether Arbizu confused Defendant with someone else. During Arbizu's testimony, a juror asked why he referred to Defendant as "T.J." if he did not know Defendant. Arbizu responded, "Because a while back we had an incident in Meadow Lake, and that's when they jumped us." During a bench conference, Defendant asked the district court to allow him to question Arbizu further about the prior incident. Defendant clarified that he would not mention Munoz, but he wanted

6

to question Arbizu regarding whether Arbizu confused Defendant with someone else. The court allowed cross-examination regarding the prior incident for purposes of the mistaken identity issue, but sustained the State's objection when Defendant began to question Arbizu about Munoz.

The record reflects that the district court allowed Defendant to cross-examine Arbizu for the requested purpose of exploring whether Arbizu confused Defendant with someone else. The record further reflects that the court only limited the cross-examination when Defendant began to question Arbizu about Munoz, contrary to Defendant's earlier assertion that he would not mention Munoz. To the extent that Defendant argues that the district court erred by not allowing him to fully cross-examine Arbizu, we conclude that Defendant failed to articulate any consequential fact or purpose to support further cross-examination regarding the prior altercation. *See Gallegos*, 2007-NMSC-007, ¶ 25. Accordingly, because Defendant failed to articulate any consequential fact other than propensity to which the testimony was directed, we affirm the district court's rulings regarding the exclusion of Munoz's testimony and its limits on the cross-examination of Arbizu.

**Prosecutorial Misconduct**

Defendant argues that the prosecution committed misconduct by obtaining commitments from prospective jurors to misapply the law regarding self-defense and defense of another, vouching for its charging decision, and introducing evidence of

7

victim impact in a non-capital case. Defendant concedes that he failed to preserve this issue, but asks this Court to review the issue for plain or fundamental error.

This Court sparingly applies the plain error rule and plain error "only applies to errors in evidentiary matters." *State v. Torres*, 2005-NMCA-070, ¶ 9, 137 N.M. 607, 113 P.3d 877. Therefore, plain error may be applied where an evidentiary ruling affected the defendant's substantial rights, and raised "grave doubts about the validity of the verdict, due to an error that infects the fairness or integrity of the judicial proceeding." *Id.* (internal quotation marks and citation omitted). When reviewing for fundamental error, "the jury verdict will not be reversed unless necessary to prevent a miscarriage of justice." *Sandoval I*, 2011-NMSC-022, ¶ 13 (internal quotation marks and citation omitted). We will reverse a conviction under the fundamental error doctrine only "if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted).

Defendant first contends that the prosecutor impermissibly elicited a commitment by jurors to misapply the law of self-defense involving multiple assailants. Defendant asserts that this issue is interrelated with the issue of the error in the jury instructions regarding the law of self-defense involving multiple assailants

8

and requests that this Court review their impact together for cumulative error. Our Supreme Court determined that the error in the jury "instructions did not preclude Defendant from presenting his multiple assailant claim to the jury." *Sandoval I*, 2011-NMSC-022, ¶ 29. *Sandoval I* reasoned that Defendant and the State presented different theories regarding self-defense, and "the jury chose to accept the State's theory of the case and reject Defendant's theory." *Id. Sandoval I* further held that no fundamental error occurred, primarily because Defendant was not precluded from presenting his multiple assailant theory to the jury. *Id.* Relying on *Sandoval I*, we conclude that because the district court did not preclude Defendant from presenting his theory regarding self-defense to the jury, any error in the State's presentation of the law regarding self-defense was not fundamental error. Similarly, we determine that because the district court permitted Defendant to present his self-defense claim, no plain error occurred that would raise grave doubts regarding the validity of the verdict. *See Torres*, 2005-NMCA-070, ¶ 9.

Defendant further argues that the prosecutor improperly vouched for its decision to try Defendant for the murders of Ramos and McCormick, but not for the shooting of Arbizu. Defendant points to statements made during opening argument, where the prosecutor informed the jury that the State was not prosecuting Defendant for the shooting of Arbizu because Arbizu was holding a gun when Defendant shot him. During closing argument, the prosecutor informed the jury that Defendant acted

9

in self-defense against Arbizu, but that the jury would have to consider whether Defendant had to defend himself against Ramos or McCormick.

We conclude that no plain or fundamental error occurred based upon the prosecutor's isolated remarks regarding its decision not to prosecute Defendant for the shooting of Arbizu. The evidence that the prosecutor referred to regarding the shooting of Arbizu was presented to the jury. *See State v. Fry*, 2006-NMSC-001, ¶ 51, 138 N.M. 700, 126 P.3d 516 (reasoning that no prosecutorial misconduct occurred where the prosecution did not present new information to the jury). Furthermore, Defendant does not cite to any evidence in the record that the prosecutor's remarks deprived Defendant of a fair trial. In fact, the jury acquitted Defendant for the murder of Ramos while convicting him for the second-degree murder of McCormick, indicating that the prosecutor did not undermine the jury's ability to weigh the evidence fairly and carefully apply the facts to the law. *Cf. State v. Wildgrube*, 2003-NMCA-108, ¶ 33, 134 N.M. 262, 75 P.3d 862 (determining that the defendant was not prejudiced by the prosecutor's isolated remarks because the jury acquitted the defendant of one of the charges, indicating that the prosecutor did not undermine the jury's ability to weigh the evidence fairly and carefully apply the facts to the law). As a result, we conclude that no plain or fundamental error occurred regarding the prosecution's isolated remarks about its decision not to prosecute Defendant for the shooting of Arbizu.

10

Finally, Defendant argues that prosecutorial misconduct occurred because the prosecutor told the jury that Arbizu, Ramos, and McCormick all had minor children during opening statement. Again, Defendant fails to cite to any evidence in the record that the prosecutor's remarks deprived Defendant of a fair trial. Furthermore, as previously noted, the jury demonstrated its careful weighing of the evidence by acquitting Defendant for the murder of Ramos, while convicting Defendant for the second-degree murder of McCormick. *See id.* As a result, we conclude that the prosecutor's isolated reference to the alleged victims' minor children did not constitute plain or fundamental error.

**Jury Tampering and Juror Bias**

"The essence of cases involving juror tampering . . . or bias is whether the circumstance[s] unfairly affected the jury's deliberative process and resulted in an unfair jury." *State v. Mann*, 2002-NMSC-001, ¶ 20, 131 N.M. 459, 39 P.3d 124. This Court will only overturn a district court's denial of a motion for new trial based on jury tampering or bias unless the district court abused its discretion. *Id.* ¶ 17. The district court is in the best position to decide whether to grant a new trial, as such, we will not disturb the court's decision unless it is arbitrary, capricious, or beyond reason. *Id.*

When a court learns of possible juror misconduct or tampering during trial, "it should conduct an inquiry to determine whether the fairness of the trial has been

11

threatened and then take appropriate measures." *Goodloe v. Bookout*, 1999-NMCA-061, ¶ 23, 127 N.M. 327, 980 P.2d 652. "But once the trial has concluded, prophylactic measures are unavailable. The party complaining . . . must either establish prejudice or at least request the court to conduct a further inquiry." *Id.*

As a preliminary matter, we note that Defendant never requested that the district court conduct an evidentiary hearing in this case. In Defendant's post-trial motions for a judgment notwithstanding the verdict and for new trial, Defendant alleged juror misconduct but only requested a new trial based upon actual prejudice. Similarly, during the August 22, 2007 hearing on Defendant's motions, he again alleged jury misconduct and again requested a new trial based on the evidence submitted. *See State v. Sena*, 105 N.M. 686, 688, 736 P.2d 491, 493 (1987) (stating that to support an evidentiary hearing based on jury tampering and bias, a defendant "must make a preliminary showing [with] competent evidence" (internal quotation marks and citation omitted)). At no point, did Defendant request an evidentiary hearing based on a preliminary showing of prejudice. *See Woolwine v. Furr's, Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct. App. 1987) ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court."). A ruling to have a further evidentiary hearing would have allowed the district court to call jurors in to answer questions or otherwise develop any additional record regarding the factual circumstances needed

12

to make an informed ruling as to whether actual prejudice existed. *See Kilgore v. Fuji Heavy Indus. Ltd.*, 2009-NMCA-078, ¶¶ 32-37, 146 N.M. 698, 213 P.3d 1127 (reasoning that when an evidentiary hearing is properly requested, a district court may investigate, call jurors in for questioning, and hear testimony in support of a party's claim of misconduct). Defendant chose to proceed on the merits and establish actual prejudice because he failed to pursue his opportunity to have an additional evidentiary hearing. Based upon the record before us, we cannot say that the district court erred in failing to hold an evidentiary hearing to further develop the record when no such hearing was ever requested and a preliminary showing of prejudice was never argued before the district court. *See Sena*, 105 N.M. at 688, 736 P.2d at 493 (reasoning that the district court did not err in failing to hold an evidentiary hearing if competent evidence to establish a preliminary showing of prejudice was not found to exist).

Next, we must look at whether Defendant made a showing of actual prejudice. Jury tampering occurs when a person purposefully initiates contact with a juror in an attempt to influence the juror. *Kilgore*, 2009-NMCA-078, ¶ 12; *see also Mann*, 2002-NMSC-001, ¶ 21 (defining jury tampering as "private communications between third persons and jurors," and discussing due process violations that may result). Juror bias occurs when a juror cannot act fairly and impartially in his or her role as a juror. *Mann*, 2002-NMSC-001 ¶¶ 25-26 (emphasizing that the underlying issue is whether a defendant's right to a fair and impartial jury has been violated). "This burden is not

13

discharged merely by allegation; rather, [a d]efendant must make an affirmative showing that some extraneous influence came to bear on the jury's deliberations." *Id.* ¶ 19 (internal quotation marks and citation omitted). We conclude that Defendant has failed to meet his burden.

Defendant makes two claims regarding jury tampering or bias. First, he asserts that the visible presence of Ramos family members at trial made some jurors feel uncomfortable. Specifically, he claims that the family "loiter[ed] outside the jury room" and attempted to intimidate jurors during their lunch break, in the parking lot and at the grocery store. Defendant's second assertion is that one juror, "the 'juror in black' had arrived for the final day of trial already having decided [Defendant's] guilt."

To support the jury tampering claim, Defendant produced three statements, only one of which was from a juror who actually participated in deliberations. Two of the statements were unsworn letters and both reference an incident at a grocery store. The first letter stated that a fellow juror was very nervous because she did not realize that "she would be seeing [women present in the courtroom at a grocery store] outside of trial." The second letter was written by a juror who was excused on the third day of trial and said that "[s]ome of us felt threatened and intimidated by the people that would hang around the brown van that had 'In Memory of Chino' written on the back window." Although this juror did not participate in jury deliberations, before she was

14

excused, she "felt threatened" while walking to her car, and said that "[t]wo women jurors mentioned that they were stared down by some people from that van while at the grocery store." Neither statement identifies the jurors who were allegedly stared at in a grocery store, and neither indicated what affect the incident had on either of these two jurors. Importantly, neither letter alleged that extraneous material reached the jury or that an extrajudicial conversation or communication occurred. These two letters do not indicate that the jury's deliberative process was unfairly affected. *See Sena*, 105 N.M at 688, 736 P.2d at 493 (stating that where "[a] party makes such a showing [with competent evidence], and if there is a reasonable possibility the material prejudiced the defendant, the trial court should grant a new trial" (internal quotation marks and citation omitted)).

Defendant's third jury tampering incident alleges that, in an attempt to intimidate an alternate juror, the Ramos family honked at her. The alternate juror, however, testified that she was not positive that the van was honking at her, and she did not feel intimidated or threatened by the behavior. The alternate juror did not feel it would affect her ability to fairly carry out her role as a juror. This evidence is also insufficient to make a showing that the alleged conduct in any way affected the jury verdict and prejudiced Defendant. *See id.* (recognizing that there must be a reasonable possibility that the matter prejudiced the defendant). In addition, we are persuaded by the State's argument that the Ramos family did not improperly influence the jury

15

because the jury acquitted Defendant of the murder charge involving Ramos. In light of that outcome, it is difficult to imagine that the presence of the Ramos family at trial intimidated the jurors in such a way that "unfairly affected the jury's deliberative process and resulted in an unfair jury." *Mann*, 2002-NMSC-001, ¶ 20. As a result, the district court did not abuse its discretion when it denied Defendant's motions for a judgement notwithstanding the verdict and for new trial based upon jury tampering.

Defendant also claims he did not have a fair and impartial jury because one juror expressed a premature opinion of Defendant's guilt. Defendant supports his claim of bias with the affidavit of Ms. Sanchez, Defendant's great aunt. In her affidavit, Ms. Sanchez explained that on the final day of trial a "young juror dressed in black" approached her and very rudely and sarcastically told her "[i]f you were being tried today, I would find you guilty." Ms. Sanchez believed that, because of this statement, the juror could not be fair and impartial. She said, "[i]t was obvious . . . that this juror had already made up his mind before even retiring to the jury room."

Although this alleged incident is troubling, it is also vague, uncorroborated, and the post-trial timing of the disclosure places the credibility of Defendant's great aunt at issue. Defendant failed to identify the "juror in black," and the matter was not brought to the district court's immediate attention so that the matter could be addressed prior to the completion of trial. *See Sena*, 105 N.M at 688, 736 P.2d at 493 (reasoning that the trial court did not err in refusing to inquire further into alleged

16

juror misconduct where support for Defendant's argument is "vague and uncorroborated"). In addition, the Defendant's failure to request an evidentiary hearing prevented the district court from establishing who was being referenced as the "juror in black" and prevented any further testimony on the record to develop evidence of actual bias. Similarly, because the alleged comment was directed at Defendant's great aunt, and occurred after all the evidence in the case had been presented, we cannot conclude that the district court abused its discretion when it determined that this evidence was insufficient to establish that the "juror in black" was biased toward Defendant and unfairly affected jury deliberations.

In *State v. Price*, a juror asked whether it was safe for the Defendant to be near a loaded weapon. 104 N.M. 703, 707, 726 P.2d 857, 861 (Ct. App. 1986), *modified on other grounds by State v. Ortega*, 112 N.M. 554, 817 P.2d 1196 (1991). This Court held that "although the juror's conduct was improper, it did not sufficiently demonstrate bias or prejudice so as to require a mistrial." *Id.* at 708, 726 P.2d at 862. In *Price* the juror's comment came after most of the evidence in the case had been presented, was equivocal, and was supported by the evidence that the juror had already heard. *Id.*; *cf. State v. Perea*, 95 N.M. 777, 777-79, 626 P.2d 851, 851-853 (Ct. App. 1981) (reasoning that the defendant only made a preliminary showing of prejudice where a juror expressed an improper opinion of guilt that was susceptible to only one meaning when only the state's case had been heard). In *Sena*, this Court

concluded that the district court did not abuse its discretion in denying a motion for an evidentiary hearing even where a fellow juror heard another juror state during the deliberations that "he knew the defendant was guilty, but that he could not base his conviction on anything he heard in the courtroom." 105 N.M at 687, 736 P.2d at 492. The district court did not abuse its discretion because "[the d]efendant failed to show that he had competent evidence that extraneous material reached the jury." *Id.* at 688, 736 P.2d at 493; *see State v. Chamberlain*, 112 N.M. 723, 733, 819 P.2d 673, 683 (1991) (holding that the district court did not abuse its discretion by denying a motion for further inquiry because there was no evidence that new evidentiary facts reached the jury during deliberations).

Although it was improper for the "juror in black" to express his opinion outside the jury room after all the evidence had been submitted, the questionable comment is not susceptible to only one meaning and should only be considered as a preliminary showing of prejudice that might justify a further evidentiary hearing. *See Price*, 104 N.M. at 707-08, 726 P.2d at 861-62 (holding that a district court is in the best position to determine whether an improper expression of opinion is on its face prejudicial or too equivocal to require a new trial). Here, the alleged comment occurred after both sides had presented all the evidence in their cases and this juror's opinion could reasonably have been based on the evidence heard at trial. *See Goodloe*, 1999-NMCA-061, ¶ 22 (explaining that premature deliberations are prohibited because it

18

is unfair for jurors to reach conclusions without having heard a defendant's case). Similarly, although the "juror in black" allegedly expressed an opinion of guilt prior to conducting jury deliberations, Defendant has presented no evidence that the juror failed to reach its verdict based solely on the evidence. *See id.* ("[T]he danger of prejudice arising from premature deliberation is significantly less than the danger arising from communication of information not in evidence at trial".); *see also Sena*, 105 N.M. at 688, 736 P.2d at 493 (holding that the statement of one juror alone does not indicate that extraneous material reached the jury and affected their verdict). Under the circumstances, we cannot question the district court's determination that the "juror in black" could have simply expressed his opinion based upon all the evidence that was presented at trial. *See State v. Benally*, 2001-NMSC-033, ¶ 21, 131 N.M. 258, 34 P.3d 1134 (presuming that the jury follows instructions given by the trial court, not arguments presented by counsel).

The evidence in the present case falls short of the required showing of actual bias. Because Defendant did not support his claim of bias with sufficient competent evidence, we conclude that Defendant has failed to establish that the jury's deliberative process was unfairly affected. *See Mann*, 2002-NMSC-001, ¶ 20 (explaining that the court should focus on whether extraneous information "unfairly affected the jury's deliberative process and resulted in an unfair jury"). The district court did not abuse its discretion in denying Defendant's motions based upon juror

19

bias. We affirm the district court's denial of Defendant's motions for a judgement notwithstanding the verdict and for new trial.

**Sanctions Based on Claim of Lost Evidence**

We now look at whether the district court erred in denying sanctions based on Defendant's claim that the State lost evidence. Defendant moved *in limine* for sanctions claiming the State failed to provide Defendant with a copy of a surveillance video tape generated by a third party. Both Defendant and the State were aware of the video's existence within two days of the incident. It is unclear whether a copy of this tape was ever made, and the original has since disappeared. Prosecutors assert that they have exhausted all avenues of searching for the tape and that, to their knowledge, a copy was never made. Noting that it appears as though "the state doesn't have it, and therefore couldn't turn it over," the district court denied Defendant's motion. Defendant incorrectly argues that we should review the district court's denial *de novo* because the district court failed to conduct an evidentiary hearing as to whether a copy of the tape was ever made. We are not persuaded by this argument, and will review the district court's denial of a motion for sanctions based upon lost evidence for abuse of discretion. *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027.

The district court did not abuse its discretion in failing to conduct an evidentiary hearing on whether a copy of the tape existed. Even if a copy of the tape was made, Defendant presented no evidence that the State was aware of the copy or its location.

20

To the contrary, Defendant admits that the State was "diligent in trying to pursue" whether a copy of the tape existed and where it might be. Additionally, while Defendant expressed his belief the state police might have a copy of the tape, he explicitly stops short of alleging the state police intentionally deprived him of the tape. Defendant argues that the state police had "purportedly" obtained a copy of the tape, but points to no concrete evidence that a copy of the tape actually existed, or where that copy might be.

After hearing Defendant's argument, the district court inquired into the prosecution's efforts to obtain a copy of the tape, if it existed, and determined that "the state is not responsible if there was never [a copy] in the state's possession. The record supports the district court's finding. Without evidence that a copy of the tape was intentionally hidden from Defendant, we cannot see how the district court abused its discretion by ruling on Defendant's motion without holding an evidentiary hearing. Noting that it seemed "kind of odd" that no one could determine whether a copy existed or was ever made, the district court denied Defendant's motion, but also said that Defendant can raise the motion again at a later time. Under those circumstances, the district court did not abuse its discretion.

The district court also did not abuse its discretion in denying Defendant's motion for sanctions. It is generally understood that the State has a duty to preserve evidence obtained during the investigation of a crime. *State v. Sanchez*, 1999-NMCA-

21

004, ¶ 7,  126 N.M. 559, 972 P.2d 1150.  We apply a three-part test to determine whether deprivation of evidence by the State constitutes reversible error, evaluating whether (1) "[t]he [s]tate either breached some duty or intentionally deprived the defendant of evidence[,]" (2) "[t]he improperly 'suppressed' evidence [was] material[,]" and (3) "[t]he suppression of this evidence prejudiced the defendant." *State v. Chouinard*, 96 N.M. 658, 661, 634 P.2d 680, 683 (1981).  Because Defendant has conceded that the evidence was not lost in bad faith, Defendant bears the burden of showing materiality and prejudice before sanctions are appropriate.  *State v. Pacheco*, 2008-NMCA-131, ¶ 30, 145 N.M. 40, 193 P.3d 587.  "Determination of materiality and prejudice must be made on a case-by-case basis."  *Id.*  (internal quotation marks and citation omitted).  The district court is in the best position to evaluate the importance of lost evidence.  *Id.*  We are unconvinced that the evidence is material or prejudicial.

Material evidence is evidence that is in some way "determinative of guilt" or innocence.  *Duarte*, 2007-NMCA-012, ¶ 11 (internal quotation marks and citation omitted).  Defendant argues the tape is exculpatory.  Defendant claims the  tape undercuts Arbizu's testimony and corroborates the defense account that Defendant backed away with his hands in the air.  Specifically, the defense argues that it corroborates Defendant's claim of self-defense.  The State, however, conceded the facts Defendant claims the tape corroborates: "that Jaime was an aggressor, that T.J.

22

left the J&J Mart, and that Chino and Jamie pursued T.J." The State also asserts that the tape is not as exculpatory as Defendant claims and that it would "have *strengthened* the prosecution's case by tending to show that McCormick . . . was an innocent third party caught in the wrong place at the wrong time."

Under these circumstances, we fail to see how the videotape itself could have contributed to the defense in a significant manner. The evidence was cumulative considering the fact that the State conceded to Defendant's accounting of what occurred at JJ's Country Mart. Similarly, even if the tape was material, Defendant was also primarily responsible for any impairment to his defense. *See State v. Laney*, 2003-NMCA-144, ¶ 28, 134 N.M. 648, 81 P.3d 591 ("Defendants must make an effort to discover or obtain evidence, which they are or should be aware of, in support of their defense."). Defendant was aware of the existence of a video tape within days of the incident. We conclude the Defendant has failed to show that the loss of the videotape has materially prejudiced his defense. As a result, the district court's ruling to deny a motion for sanctions was not an abuse of discretion.

**Cumulative Error**

Defendant argues that the cumulative effect of asserted errors made at trial requires reversal of his conviction. "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v.*

23

*Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). As previously discussed, our Supreme Court concluded that the jury instructions regarding self-defense and defense of another "did not properly reflect the law regarding multiple assailants." *Sandoval I*, 2011-NMSC-022, ¶ 26. However, *Sandoval I* determined no fundamental error occurred and Defendant's conviction was not a plain miscarriage of justice. *Id.* ¶ 30. Having identified no other error, we conclude that no cumulative error deprived Defendant of a fair trial. *See State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 (reasoning that the doctrine of cumulative error is strictly applied and inapplicable where the record as a whole demonstrates the defendant received a fair trial).

**CONCLUSION**

For the foregoing reasons, we affirm Defendant's conviction.

**IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

24

_____

**CELIA FOY CASTILLO, Chief Judge**


_____

**MICHAEL E. VIGIL, Judge**